**Sharon E. BONHAM, Plaintiff,**

v.

**REGIONS MORTGAGE, INC., Defendant.**

**No. Civ.A. 99–T–1499–N.**

United States District Court, M.D. Alabama, Northern Division.

Jan. 3, 2001.

Order Denying Motion for Reconsideration Jan. 19, 2001.

M. Wayne Sabel, Maricia B. Woodham, Sabel & Sabel, P.C., Montgomery, AL, for Sharon E. Bonham, plaintiff.

David R. Boyd, Charles B. Paterson, J. Beth Moscarelli, Balch & Bingham, Montgomery, AL, for Regions Mortgage, Inc., defendant.

## ORDER

MYRON H. THOMPSON, District Judge.

Plaintiff Sharon E. Bonham filed this lawsuit, charging defendant Regions Mortgage, Inc., with discriminating against her because of her age and retaliating against her for filing a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and for filing this lawsuit. She also brings supplemental state-law tort claims. She alleges that Regions's actions violated federal law (the Age Discrimination in Employment Act of 1967, as amended (ADEA), 29 U.S.C.A. §§ 621–634), and state law (the Alabama Age Discrimination in Employment Act of 1997 (AADEA), 1975 Ala.Code §§ 25–1–20 through 25–1–29, and Alabama common law). The jurisdiction of this court is proper under 42 U.S.C.A. §§ 1331 (federal question) and 1343 (civil rights), and 29 U.S.C.A. § 626 (ADEA). Jurisdiction over Bonham's supplemental state-law claims is proper under 28 U.S.C.A. § 1367.

This cause is now before the court on Regions's motion for summary judgment. For the reasons stated below, this motion

is will be granted in part and denied in part.

## I. SUMMARY–JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Once the party seeking summary judgment has informed the court of the basis for its motion, the burden shifts to the nonmoving party to demonstrate why summary judgment would be inappropriate. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing how the responsibilities of the movant and the nonmovant vary depending on whether the legal issues, to which the facts in question pertain, are ones on which the movant or nonmovant bears the burden of proof at trial). In making its determination, the court must view all evidence and any factual inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. FACTUAL BACKGROUND

Bonham, age 47, has worked at Regions for 22 years and is currently a senior collections counselor in the default services department. During her employment with Regions, Bonham has also worked in many other departments. She has received consistently positive employment evaluations and has never been reprimanded. Bonham has frequently expressed an interest in promotion.

Since the fall of 1998, Regions has hired four individuals to supervisory positions, and all of the individuals are younger than Bonham:

*Smart and Stallings:* In October of 1998, Bonham became aware of a job vacancy for a supervisory position in her department. The job posting made no mention of prior supervisory experience as a prerequisite for the position. Bonham applied for the job with the understanding that she was also applying for a second supervisory position, and she was interviewed for both positions by the decisionmaker in her department, Rory Luther. During the interview, Luther made comments that drew attention to Bonham's age, stating that she was "getting real old" and that, because of her age, she was "going to have to watch [herself], she may have to stop stay[ing] up so late and partying at night." He never indicated, however, that prior supervisory experience was a *sine qua non* for the job. Bonham was not promoted to either position. Joe Smart, age 40, was hired for the first position in November 1998. Smart was not as well qualified as Bonham. Bill Stallings, age 30, was hired to the second supervisory position in December 1998. He, like Smart, was less well-qualified than Bonham.

*Bodiford:* In February 1999, Bonham sent a letter to the EEOC charging that she had been discriminated against by Regions. Following this action, a third supervisory position opened up, and Tim Bodiford, age 22, received it. Moreover, Bonham's supervisors began to treat her in a hostile manner and no longer socialized with her.

*Hall:* In June 2000, Bodiford resigned from the supervisory position to which he had been hired. Bonham examined the job posting and decided not to apply for the position because it listed one-to-two years of supervisory experience as a requirement. She claims that Regions tailored the job prerequisites for this and future supervisory positions so as to preclude her from consideration. Eventually, Bessie Hall, age 41, was promoted to the position that Bodiford vacated.

Bonham asserts the following claims: (1) Regions denied her the Smart, Stallings, Bodiford, and Hall positions because of her age, in violation of both the ADEA and

AADEA; and (2) Regions denied her the Bodiford and Hall positions in retaliation for filing an EEOC charge and this lawsuit, in violation of the ADEA and the AADEA.

## III. DISCUSSION

In support of its summary-judgment motion, Regions argues that Bonham has not offered sufficient evidence to support her claims that she was discriminated against because of her age and that she was retaliated against for engaging in protected activity. Regions also contests that Bonham has offered sufficient evidence to survive summary judgment on her remaining state-law claims. The court finds that these arguments are without merit with regard to Bonham's claims that she was denied the Smart and Stallings positions because of her age. However, the court finds that summary judgment should be granted on her remaining federal and state-law claims.

### A. EEOC Complaint

The ADEA's purpose is "to promote employment of older persons based on their ability rather than age[, and] to prohibit arbitrary age discrimination in employment." 29 U.S.C.A. § 621(b). To this end, the ADEA specifically prohibits discrimination in employment against persons, 40 and above, because of age. *See* 29 U.S.C.A. §§ 623(a)(1), 631(a).[1] One form of redress for violating this prohibition is filing a lawsuit against an allegedly discriminating employer. However, an employee may file an ADEA lawsuit only if she has filed a charge of discrimination with the EEOC "within 180 days after the

alleged unlawful practice occurred." 29 U.S.C.A. § 626(d)(1).

This court must therefore consider whether Bonham timely filed such a charge with the EEOC. The critical dates are as follows:

*December 1, 1998:* Bonham received notice that she had not been selected for the supervisory position for which Smart was hired.

*December 18, 1998:* Bonham received notice that she had not been chosen for the second supervisory position to which Stallings had been promoted.

*March 30, 1999:* The EEOC received a letter, dated February 29, 1999, from Bonham.

Regardless of which date applies for jurisdictional purposes, Bonham's letter was indisputably filed within 180 days of her notification of Regions's decision not to promote her to the first supervisory position on December 1, 1998.

 What remains for the court to determine is whether the letter constitutes a charge within the meaning of that term in the ADEA context. The Code of Federal Regulations delineates the requirements of a charge under the ADEA and states that a charge is sufficient if it is in writing, names the prospective respondent, and generally alleges the discriminatory acts.[2] *See* 29 C.F.R. §§ 1626.8(b) & 1626.6. An ADEA "action may be based 'not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investiga-

---

1. The ADEA provides in part:
 "It shall be unlawful for an employer—. . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age"
 29 U.S.C.A. § 623(a)(1). However, the prohibition is "limited to individuals who are at least 40 years of age." 29 U.S.C.A. § 631(a).

2. Regions's assertion that Bonham's charge with the EEOC does not conform to the regu-

latory requirements for such a charge because it was never verified is immaterial. The regulations that specify the form and content for a charge with the EEOC under the ADEA nowhere require such a charge to be verified. *See* 29 C.F.R. §§ 1626.1 through 1626.18. Moreover, the EEOC forms that Bonham signed on June 15, 1999, and November 10, 1999, both contained declarations that Bonham's statements were made under penalty of perjury.

tion that could reasonably be expected to grow out of the initial charges of discrimination.'" *Chanda v. Engelhard/ICC,* 234 F.3d 1219, 1224 (11th Cir.2000) (quoting *Fine v. GAF Chemical Corp.,* 995 F.2d 576, 578 (5th Cir.1993) (quoting *Fellows v. Universal Restaurants Inc.,* 701 F.2d 447, 451 (5th Cir.), *cert. denied,* 464 U.S. 828, 104 S.Ct. 102, 78 L.Ed.2d 106 (1983))). In addition, the Code of Federal Regulations provides that the EEOC's rules are to be liberally construed so as to effectuate the purpose of their relevant statutes. *See* 29 C.F.R. §§ 1601.34 & 1626.19.

■ Bonham's letter to the EEOC was sufficiently precise to identify the parties and the actions about which she was complaining. Although the letter alleged gender discrimination, it also explicitly referred to the fact that Bonham had been employed with the company for more than 21 years while those who were receiving promotions were of a newer clique with much less experience. It would not take much of a leap to conclude from the facts in the letter that an age bias might be in play too. Indeed, the EEOC, after reviewing Bonham's letter reached that conclusion and had her include an age-bias claim in her formal charge. Construing Bonham's letter liberally, the court concludes that a reasonable person reviewing the letter could have thought that age discrimination might be an issue and that a reasonable investigation of the EEOC charge would have encompassed age discrimination based on the factual allegations made.

Moreover, 29 C.F.R. § 1626.19(c) provides that "Whenever a charge is filed under one statute and it is subsequently believed that the alleged discrimination constitutes an unlawful employment practice under another statute administered and enforced by the Commission, the charge may be so amended and timeliness determined from the date of filing of the original charge." Therefore, even if the

court were to decide that Bonham's letter to the EEOC raised no issue of age discrimination, her subsequent filings with the EEOC alleging age discrimination cured any such defect. Because Bonham filed a valid charge with the EEOC within 180 days of the alleged incidents of age discrimination, the court finds that Regions's arguments as to the timeliness and form of her charge are without merit.

### B. Age–Discrimination Claims

Bonham claims that Regions discriminated against her because of her age, in violation of both the ADEA and the AADEA, by promoting Smart, Stallings, Bodiford, and Hall to supervisory positions. Regions's motion for summary judgment is due to be denied with regard to Bonham's claims for the positions to which Smart and Stallings were promoted, but granted with regard to the Bodiford and Hall positions.

For suits under the ADEA, the Eleventh Circuit Court of Appeals has adopted the principles that govern the order and allocation of proof in cases under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e–17. *See Chapman v. AI Transport,* 229 F.3d 1012, 1024 (11th Cir.2000) (en banc). And, because it is self-evident that the AADEA's purpose and prohibition are like the ADEA's, to promote employment of older persons based on their ability rather than age and to prohibit arbitrary age discrimination in employment, it follows that these principles should govern in AADEA cases as well.[3]

### 1. Direct Evidence

Bonham contends that she has presented 'direct evidence' of discrimination based on her age. Specifically she alleges that Luther's comments to her during her job interview for the supervisory positions to which Smart and Stallings were hired constitute direct evidence of age discrimina-

---

**3.** *Compare* 1975 Ala.Code § 25–1–21 ("No employer, employment agency, or labor organization shall discriminate in employment against a worker 40 years of age and over in hiring, job retention, compensation, or other terms or conditions of employment.") *with supra* note 1.

tion, in violation of both the ADEA and the AADEA. The Eleventh Circuit has explained that direct evidence of employment discrimination is evidence "sufficient to prove discrimination without inference or presumption." *Clark v. Coats and Clark, Inc.*, 990 F.2d 1217, 1223 (11th Cir.1993). "Only the most blatant remarks, whose intent could be nothing other than to discriminate, constitute direct evidence." *Id.* Confronted with direct evidence, a trial court must assess the employee's claim as follows: "[T]he trial judge must initially make a credibility finding as to whether or not plaintiff's proffered direct evidence of discrimination is to be believed.... The trial court must also make a finding of fact as to whether or not the decisionmaker 'relied upon [age]-based considerations in coming to its decision.' ... In other words, the fact finder must determine whether '[age] played a motivating part in an employment decision.' ... If the trial court both credits the direct evidence and finds that the evidence played a substantial role in the employment decision at issue, then the defendant can avoid liability only by proving that it would have made the same decision even if it had not allowed such discrimination to play a role." *Haynes v. W.C. Caye & Company, Inc.*, 52 F.3d 928, 930 (11th Cir.1995) (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 242, 244, 109 S.Ct. 1775, 1786, 1804, 104 L.Ed.2d 268 (1989)).

The above principles are much more easily stated than applied. First, it is unclear what the Eleventh Circuit meant by its definition that direct evidence is "evidence sufficient to prove discrimination without inference or presumption." *Clark*, 990 F.2d at 1223. Does the definition mean that the evidence is sufficient if it reflects, without inference or presumption, a mere discriminatory bias toward the group to which the employee belongs—in other words, that the evidence need only

reflect a general discriminatory bias? Or does the direct evidence definition require more, that is, that the evidence must reflect, without inference or presumption, a specific discriminatory intent to commit the challenged conduct? In *Haynes v. W.C. Caye & Company, Inc.*, the Eleventh Circuit implied the former, giving as an example of direct evidence of a gender-based demotion or discharge, a supervisory's question whether "a sweet little old lady could get tough enough with the customers and collect the money." 52 F.3d at 930. However, in *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550 (11th Cir.1988), the court appeared to apply the latter definition, giving as an example of direct evidence of age discrimination, a scrap of paper reading, "Fire Rollins—she is too old." 837 F.2d at 1558 n. 13.[4]

■ This court concludes that the latter understanding applies: that the evidence must reflect, without inference or presumption, a specific discriminatory intent to commit the challenged conduct. The Supreme Court has made clear that "the plaintiff's age must have 'actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, ——, 120 S.Ct. 2097, 2105, 147 L.Ed.2d 105 (2000) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993)). Accordingly, the direct evidence must go beyond that which reflects a general legally impermissible bias and instead must establish, without the need of inference or presumption, that the bias actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome. Moreover, because (unlike with circumstantial evidence) the burden of proof actually shifts to the defendant and because this burden is to prove that the

---

**4.** In *Hearn v. General Elec. Co.*, 927 F.Supp. 1486, 1497–98 (M.D.Ala.1996) (Thompson, J.), this court expounded at length on the murkiness of the Eleventh Circuit's direct-evidence definition and, in addition, on the

needlessness and implausibility of the distinction between direct and circumstantial evidence. Nevertheless, because this court is bound by this circuit's precedent, it will continue to draw the distinction.

defendant actually would have reached the same decision in the absence of the illegal activity, it follows that, to warrant this type of shift, the plaintiff must have shown in the first instance that the illegal bias was actually a motivating factor in the decision being challenged. *See Dilla v. West,* 4 F.Supp.2d 1130, 1139 (M.D.Ala. 1998) (Thompson, J.) ("The court will proceed on the basis of the more constricted definition of direct evidence, as employed in the most recent decisions of the Eleventh Circuit, and find that the plaintiffs have proffered direct evidence of age discrimination only if the statements at issue are sufficient, without inference or presumption, to prove discriminatory intent to commit the challenged act."), *aff'd,* 179 F.3d 1348 (11th Cir.1999).

Here, Luther's alleged statements that Bonham was "getting real old" and that, because of her age, she might "have to stop stay[ing] up so late and partying at night," reflect a general bias only. One would have to engage in a further inference to conclude that Luther denied Bonham a supervisory position based on this bias. The court therefore concludes, under the standards for summary judgment, that the statements Luther made while examining Bonham's job application during her interview do not constitute direct evidence of discrimination under the ADEA and the AADEA.

### 2. Circumstantial Evidence

The court next examines whether Bonham has presented sufficient circumstantial evidence of age discrimination. The framework for establishing age discrimination with circumstantial evidence is now settled in the Eleventh Circuit and is as follows:

> "Under that framework, the plaintiff must first establish a prima facie case of discrimination. One method a plaintiff can use to establish a prima facie case for an ADEA violation is by showing that he (1) was a member of the protected age group, (2) was subjected to adverse employment action, (3) was qualified to do the job, and (4) was replaced

by or otherwise lost a position to a younger individual.

· · , · · ·

> "If a plaintiff establishes a prima facie case of discrimination, the defendant employer must articulate a legitimate, nondiscriminatory reason for the challenged employment action. However, the employer's burden is merely one of production; it need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.

> "If the defendant articulates one or more such reasons, the presumption of discrimination is eliminated and "the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision. If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim."

*Chapman v. AI Transport,* 229 F.3d 1012, 1024–25 (11th Cir.2000) (en banc) (citations and quotation marks omitted).

As a preliminary matter, however, Regions contends that Bonham cannot establish a prima-facie case of discrimination with regard to two of the positions because she failed to apply for them. Regions does not contest that Bonham applied for at least one position for which she was turned down. The company argues that if she failed to apply for the other supervisory positions, Bonham cannot have been subjected to discrimination because she was not promoted to them.

As a matter of law, the court need not reach this issue with respect to the Smart and Stallings positions that were available in the fall of 1998 because Bonham has presented evidence that she was considered, that is, interviewed, for both positions in November 1998.[5] If her employer considered Bonham for both supervisory positions in the fall of 1998, and by applying for one position both Bonham and her employer understood that she was applying, and would be considered, for both positions, then whether she actually filled out duplicate sets of paperwork does not affect her claim. A finder of fact could reasonably conclude that she had applied for, and was considered for, both positions.

■ With regard to the supervisory positions filled by Bodiford in 1999 and Hall in 2000, however, Regions's argument that Bonham did not apply defeats her claims. As indicated, a plaintiff's failure to apply for a position does not automatically defeat a claim of age discrimination. If a plaintiff proves that she "would have applied for [a] job had it not been for [the employer's discriminatory] practices ... [then] the nonapplicant is in a position analogous to that of an applicant." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 368, 97 S.Ct. 1843, 1871, 52 L.Ed.2d 396 (1977). Moreover, if an employer creates an atmosphere in which employees understand that applying would be futile, a plaintiff may still establish a prima-facie case of discrimination. *See, e.g., id.* at 366, 97 S.Ct. at 1870 ("When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting and application."); *see also Wanger v. G.A. Gray Co.*, 872 F.2d 142, 147 (6th Cir.1989).

■ In this case, Bonham cannot claim that she did not apply for the Bodiford position because her employer created an atmosphere in which she thought that ap-plying would be futile. She does not even claim to have been aware of the job opening, and she has not provided any evidence that had she known about the position, she would not have applied.

Bonham, admittedly, does assert that she did not apply for the position because her superior, Luther, did not bring the position to her attention. She has presented evidence that it was Regions's policy for supervisors to develop subordinates for advancement within the company. She has also provided evidence that Luther, acting in a supervisory capacity, encouraged subordinates to apply for supervisory positions. However, Bonham has presented no evidence that Luther encouraged others to apply for the Bodiford position but did not encourage her, and, in particular, she has provided no evidence that he encouraged persons to apply for this and other positions in an overall manner or pattern that reflect age bias. Absent any such evidence, Bonham cannot maintain that she failed to apply for the position because of her employer's discrimination. Consequently, her failure to apply for the Bodiford position renders her claim of age discrimination in regard to this supervisory position nugatory. Summary judgment will be granted on Bonham's ADEA and AADEA claims that she was illegally denied the Bodiford position because of her age.

Bonham asserts that she did not apply for the Hall position because Regions had included in its position notice a supervisory-experience requirement, and she lacked such experience. Luther, however, was not the person who included this requirement in the notice, and Bonham has presented no evidence that the person who did, Kathy Gradnigo, was in any way motivated by Bonham's age; nor has she shown that Gradnigo was acting on the instructions of anyone who was so motivated. Without such evidence, the court cannot draw any inference that Bonham failed

---

**5.** *See* Deposition of Sharon E. Bonham at 57, 62–63.

to apply for the position because of her employer's discrimination, and summary judgment will be granted on her ADEA and AADEA claims for this position as well.

■ ■ The court therefore now turns to Bonham's ADEA and AADEA claims that she was illegally denied the Smart and Stallings positions because of her age. There is no dispute that Bonham has presented evidence to support the first three elements of a prima-facie case. She was born in 1953, and at all times relevant in this suit, she was over the age of 40. Therefore, she clearly falls within the protected class of persons under the ADEA. *See* 29 U.S.C.A. § 631. Regions's failure to promote Bonham is indisputably an adverse employment action under the ADEA. *See Ramsey v. Chrysler First, Inc.*, 861 F.2d 1541 (11th Cir.1988) (recognizing failure to promote as adverse employment action under the ADEA). Likewise, there is no dispute that the individuals who were hired to supervisory positions were either substantially younger than Bonham, or younger than age 40, or both. *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996) (stating that an ADEA plaintiff must show she was replaced by someone "substantially younger" and not necessarily by someone outside the protected age range); *see also Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428 (11th Cir.1998); *Jameson v. Arrow Co.*, 75 F.3d 1528, 1531 (11th Cir.1996). Stallings was in his twenties, and Smart had just turned 41.

The only element of Bonham's prima-facie case that Regions disputes is whether she was qualified for the supervisory positions because she did not have prior supervisory experience. Such experience, Regions asserts, was a prerequisite for supervisory positions and was a factor that was considered in the promotion and hiring process. In response, Bonham argues that the information that was posted with at least one of the job offerings for which she was considered did not list prior su-

pervisory experience as a prerequisite. She also offers evidence that one of the individuals who was selected for a supervisory position, Stallings, had no supervisory experience when he was promoted. Based on this evidence, a reasonable finder of fact could conclude that Bonham was qualified for a supervisory position at Regions. Thus, the court concludes that Bonham has established a prima-facie case of discrimination using circumstantial evidence.

As stated, in a discrimination suit under the ADEA, once a plaintiff has made out a prima-facie case of discrimination, the burden shifts to the employer to rebut the presumption by producing evidence to raise a genuine issue of fact as to whether the employer discriminated. Regions proffers one legitimate, nondiscriminatory reason for its decision not to promote Bonham: She lacked the requisite supervisory experience for the position. This suffices to meet Regions's burden of production.

Because Regions has proffered a legitimate, nondiscriminatory reason for its adverse employment action, the burden shifts back to Bonham to show that Regions's reason is pretextual. Bonham contends that Regions's claim that she lacked supervisory experience is pretextual for three reasons: First, she has submitted evidence that when Luther met with her, he commented, among other things, that she was "getting real old." Bonham has therefore shown a general bias on the part of the decisionmaker. Against this background, she has shown, second, that at least one other person whom Luther selected for a supervisory position, Stallings, lacked such experience. And, finally, there is evidence that the requirement was added to the factors for consideration only after she had been considered and turned down for promotion to the Smart and Stallings positions. Therefore, a reasonable finder of fact could conclude that Regions's proffered legitimate, non-discriminatory reason was a pretext for illegal age discrimination.

Accordingly, because Bonham has made out a prima-facie case of discrimination using circumstantial evidence, and because she has provided evidence to show that Regions's explanation for not promoting her may be pretextual, the court must hold that there exist disputed material issues of fact. Consequently Regions's motion for summary judgment on Bonham's ADEA and AADEA claims will be denied as to the Smart and Stallings positions.

### C. Retaliation Claims

Bonham bases her ADEA and AADEA retaliation claims on three theories: (1) she was retaliated against when Regions failed to consider her for the position to which Bodiford was hired in 1999; (2) she was retaliated against when Regions altered the prerequisites in a way that excluded her from consideration for a supervisory position that Hall received in the summer of 2000 when Bodiford resigned; and (3) she was retaliated against when Luther did not otherwise consider her for the Hall position. Bonham argues that Regions took these actions because she filed a charge with the EEOC and later filed this lawsuit. Construing the evidence and all factual inferences in Bonham's favor, this court is not satisfied that she has made out a prima-facie case of retaliation under any of these theories.

The ADEA provides:

"It shall be unlawful for an employer to discriminate against any of his employees ... because such individual ... has opposed any practice made unlawful by this section, or because such individual ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceedings, or litigation under this chapter."

29 U.S.C.A. § 623(d). And the AADEA provides:

"It is an unlawful employment practice for an employer ... to discriminate against an individual because that individual has opposed any practice which is an unlawful employment practice under this article, or because that individual has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this article."

1975 Ala.Code § 25–1–28. Thus, the ADEA would prohibit Regions from retaliating against Bonham because she filed an EEOC charge, and both the ADEA and the AADEA would prohibit Regions from retaliating against Bonham because she filed this lawsuit.

■ The Courts of Appeals that have directly addressed the issue have held that the same analysis that applies to the allocation of burdens of production and to the presentation of circumstantial proof in Title VII also applies to retaliation claims under the ADEA. See, e.g., Shirley v. Chrysler First, Inc., 970 F.2d 39, 42 (5th Cir.1992). Moreover, the standards that apply to Title VII claims also apply to ADEA cases. See, e.g., Oscar Mayer & Co. v. Evans, 441 U.S. 750, 756, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979); Rebar v. Marsh, 959 F.2d 216 (11th Cir.1992); Baker v. Sears, Roebuck & Co., 903 F.2d 1515, 1519 (11th Cir.1990); Anderson v. Savage Laboratories, Inc., 675 F.2d 1221, 1224–25 (11th Cir.1982). Therefore, this court analyzes Bonham's ADEA and AADEA retaliation claims using the allocation of burdens of production and persuasion that the court used for her discrimination claims.

■ In retaliation cases under Title VII, and thus under the ADEA and the AADEA, a prima-facie case requires a showing of (1) participation in actions protected by the statute; (2) an adverse employment action; and (3) a causal link between the protected actions and the adverse employment decision. See Hamm v. Members of the Bd. of Regents, 708 F.2d 647, 654 (11th Cir.1983). The Eleventh Circuit has explained its interpretation of the "causal link" prong of a retaliation claim not as "the sort of logical connection that would justify a prescription that the protected participation in fact prompted the adverse action," since that could require direct evidence of

discrimination. *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir.), *cert. denied*, 474 U.S. 981, 106 S.Ct. 385, 88 L.Ed.2d 338 (1985). Instead, "the 'causal link' element [requires] merely that the plaintiff establish that the protected activity and the adverse action were not wholly unrelated." *Simmons*, 757 F.2d at 1189; *see also Bigge v. Albertsons, Inc.*, 894 F.2d 1497, 1501 (11th Cir.1990). At a minimum, the plaintiff must demonstrate that his employer knew of his participation in the protected activity at the time of the adverse employment action. *See Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir.1993).

### 1. Bodiford Position

▮ Bonham claims Regions retaliated against her for filing an EEOC charge by not considering her for the position to which Bodiford was hired in the summer of 1999. Specifically, she claims that Regions retaliated when Luther failed to bring the position to her attention. There is no dispute that filing a charge with the EEOC is protected activity under the ADEA. *See* 29 U.S.C.A. § 623(d). The court need not decide, however, whether Luther's failure to make Bonham aware of the opening rises to the level of an adverse employment action under the ADEA because the court concludes that Bonham has not provided sufficient evidence of a causal connection between Luther's omission and her statutorily protected activities.

Bonham has produced no evidence that Luther was or should have been aware of her EEOC charges when the hiring process took place for the supervisory position in the summer of 1999. Under the Eleventh Circuit's analysis in *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993), such awareness is the minimum that a plaintiff must demonstrate to establish a prima-facie case of retaliation. Absent evidence that Luther knew or should have known about her EEOC charge at that time, Bonham cannot establish a prima-facie case that Regions retaliated against her when Luther did not bring the opening for a supervisory position to her attention.

### 2. Changed Job Prerequisites

Bonham also claims that Regions retaliated against her by changing the job prerequisites for a supervisory position that came open when Bodiford resigned in the summer of 2000. Specifically, she claims that, by the summer of 2000, Regions knew of both her EEOC charge and her lawsuit, and that the prerequisites for the position were changed to preclude her from consideration.

▮ Bonham's EEOC charge and this lawsuit are similarly protected activities under the retaliation provisions of the ADEA, *see* 29 U.S.C.A. § 623(d), and this lawsuit is similarly a·protected activity under the retaliation provisions of the AAD-EA. *See* 1975 Ala.Code 25–1–28. Regions does not contest that changing the prerequisites of a supervisory position could constitute an adverse employment action; and it is clear that an employer's acts that have an adverse effect on future employment opportunities can constitute an adverse employment action. *See, e.g., Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir.1996); *Perryman v. West*, 949 F.Supp. 815 (M.D.Ala.1996) (Albritton, J.). The question is solely whether Bonham has established a causal relationship between the change in job requirements and her protected activity. She has not presented evidence to establish such a relationship.

▮ Admittedly, by the summer of 2000, Kathy Gradnigo, who had drafted the job posting in June 2000, was aware of Bonham's EEOC charge. However, her awareness was that of only a limited functionary in producing some files Regions had requested; she did not know the allegations of the charge, its nature, or even how Regions viewed it. Nor was she aware of Bonham's lawsuit filed in December 1999. Gradnigo's deposition shows only that in response to the question of when she first became aware of any legal

action that Bonham had taken, Gradnigo answered: "I was asked to produce some job files that I—from 1998, maybe, because there was a complaint. That's all I really knew." Bonham has offered no evidence that tends to show that Gradnigo's awareness of Bonham's charge was more substantial than she admits.[6] Nor has Bonham presented evidence to show that Gradnigo's awareness of Bonham's charge was ongoing. The court must conclude that Gradnigo's knowledge of Bonham's protected activity was minimal, at best.

Moreover, where a significant period of time elapses between when an individual engages in protected activity and an alleged incident of retaliation, courts have often held that the delay can preclude a determination of a causal relationship. *See, e.g., Maniccia v. Brown,* 171 F.3d 1364, 1370 (11th Cir.1999) ("The more than 15–month period that elapsed between Appellant's grievance and the alleged adverse employment actions belies her assertion that the former caused the latter"); *Causey v. Balog,* 162 F.3d 795, 803 (4th Cir. 1998) (13–month delay between protected activity and termination of employment was too long to establish causation); *O'Connor v. Chicago Transit Auth.,* 985 F.2d 1362, 1370 (7th Cir.1993) (nine-month gap between protected activity and adverse employment action precluded a reasonable inference of causation). The EEOC received Bonham's charge in March 1999. Gradnigo testified that she became aware of Bonham's charge in the fall of 1999. And the alleged incident of retaliation occurred in June 2000. Thus almost a year and a half elapsed between Bonham's EEOC charge and the alleged incident of retaliation. Moreover, approximately three quarters of a year elapsed between the time that Gradnigo became minimally aware of Bonham's lawsuit and the alleged incident of retaliation. Absent more substantial evidence of a causal con-

nection between the change in posted job requirements and Bonham's EEOC complaint, there is nothing to support a reasonable inference of retaliation.

To be sure, Bonham has presented evidence that Gradnigo added the supervisory experience requirement to the posting after a weekly staff meeting with her department's other interviewers and with supervisor Geraldine Bowen. During the meeting the participants discussed the fact that "there was a lot of confusion with job descriptions," including what would constitute the job experience necessary for a supervisory position. However, she has presented no evidence that this confusion was related in any way to Bonham's EEOC charge or lawsuit. Thus the court concludes that no reasonable finder of fact could determine that, based on the evidence Bonham has presented, Regions retaliated against her in connection with the change in posted job requirements.

In short, Gradnigo became minimally aware in the fall of 1999 that Bonham had filed an EEOC charge approximately nine months earlier, and, three quarters of a year later, in the summer of 2000, Gradnigo added the job requirement of prior supervisory experience to the job posting for the position to which Hall was promoted. A reasonable person, based on this evidence, would be compelled to conclude that the two were almost certainly "wholly unrelated." *Simmons v. Camden County Bd. of Educ.,* 757 F.2d 1187, 1189 (11th Cir.), *cert. denied,* 474 U.S. 981, 106 S.Ct. 385, 88 L.Ed.2d 338 (1985). This is one of those cases in which the defendant is "entitled to judgment as a matter of law ... [because] the plaintiff [has] created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had oc-

---

**6.** The court notes that, when Bonham came forward with additional charges of discrimination and retaliation in connection with Regions's change in the posted job requirements and its process for hiring Hall, Bonham was permitted to conduct additional discovery in connection with these allegations. She has had ample opportunity to find and present evidence in connection with the additional claim she has raised.

curred...." *Chapman,* 229 F.3d at 1025 n. 11 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, ——, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105). Therefore, Bonham's ADEA and AADEA claim of retaliation in connection with this incident must fail.

### 3. Hall Position

Regions eventually promoted Hall in the summer of 2000 to fill the supervisory position vacated when Bodiford resigned. Bonham claims that Regions retaliated against her when Luther failed to bring the position to her attention. There is no doubt that Luther was aware of Bonham's EEOC charge or her subsequent lawsuit. His actions at Regions were at the center of Bonham's allegations, and they have been the center of scrutiny in this case. For instance, he was kept apprized of the way that Regions's legal department was handling Bonham's charge and lawsuit. And he was deposed extensively for the first time in this litigation on April 13, 2000.

■■■ Luther's awareness of Bonham's protected activity is not so distant in time from the alleged incident of retaliation in the early summer of 2000 so as to rebut a presumption that the two may be causally connected. Therefore, the only question regarding this claim of retaliation is whether Luther's failure to bring the fact of an opening for a supervisory position to Bonham's attention in June 2000 amounts to an adverse employment action.

An adverse employment decision is "an ultimate employment decision, such as discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'" *Gupta v. Florida Board of Regents,* 212 F.3d 571, 587 (11th Cir.2000) (quoting *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1300 (3d Cir.1997)). Such an action must meet a threshold level of "substantiality." *Id.* (quoting *Wideman v. Wal–Mart Stores, Inc.,* 141 F.3d 1453, 1456 (11th Cir.1998)).

Whether an action is sufficient to be an adverse employment action that is cognizable under the anti-retaliation provisions of federal anti-discrimination statutes, such as the ADEA, "must be determined on a case-by-case basis using both a subjective and an objective standard." *Id.* (citations omitted).

Accordingly, the court must decide whether the failure to bring the supervisory position to Bonham's attention affected her employment in a manner described in *Gupta.* The court concludes that it does not.

The only way that failing to bring the opening for a supervisory position to Bonham's attention may have affected her employment was because it could have deprived her of an employment opportunity. *See Gupta,* 212 F.3d at 587. However, Bonham does not dispute that the position was properly posted, nor does she contend that the Regions procedure for posting such positions was inadequate in any way. Indeed, she admits that she noticed the change in the posted requirements and therefore decided not to apply for the position. Thus the court cannot say that Luther's failure to make Bonham aware of the opening deprived her of any employment opportunity. She was aware of the opening, and independently decided she was not qualified and did not apply. There is no causal relationship between Luther's failure to bring the position specially to her attention and the constriction of her future employment opportunities. Bonham herself is responsible.

Because the court concludes that Luther's failure to bring the posting of a supervisory position to Bonham's attention did not deprive her of an employment opportunity, it is not necessary to reach the question of whether this conduct was substantial under the anti-retaliation provisions of the ADEA or the AADEA.

### D. Remaining State–Law Claims

Bonham has two additional state-law claims. She alleges that (1) Regions's neg-

ligently supervised Luther and (2) the company negligently retained Luther. Both torts are recognized under Alabama law.

*1. Negligent–Supervision Claim*

■ Bonham specifically alleges that Luther's conduct in the hiring process evidences incompetence that either was known or should have been known to Regions. Under Alabama law, a defendant may be liable for its employee's incompetence if it actually knows or, had it exercised proper care, would have known of the incompetence. *See, e.g., Lane v. Central Bank of Alabama N.A.,* 425 So.2d 1098 (Ala.1983); *Anonymous v. Lyman Ward Military Academy,* 701 So.2d 25 (Ala.Civ.App.1997); *see also Pescia v. Auburn Ford–Lincoln Mercury Inc.,* 68 F.Supp.2d 1269 (M.D.Ala.1999) (Carroll, M.J.). To establish this tort, Bonham must establish the elements of negligence, as tailored by the Supreme Court of Alabama to cases involving supervision. She must show duty, breach of duty, foreseeability, and causation. *See, e.g., Norfolk S. Ry. Co. v. Denson,* 774 So.2d 549 (Ala. 2000). Therefore, in this case, Bonham must establish that (1) Regions had a duty of care toward her in ensuring that Luther properly followed hiring and promotion procedures; (2) Luther's actions were incompetent; (3) Regions breached the duty it owed to Bonham; (4) Luther's actions were known, or should have been foreseeable, to Regions; and (5) Regions's negligent supervision of Luther was a proximate cause of her damages.

■ In most cases of negligent supervision, the claim is brought by customers or clients of a business who have been injured by the conduct of one of the business's employees. *See, e.g., Ledbetter v. United American Ins. Co.,* 624 So.2d 1371 (Ala.1993). This case, however, is different. The individual bringing the claim is a subordinate employee of the employee whose incompetent actions, she alleges,

caused her injury. The court will assume that Regions had a duty of care to Bonham to ensure that Luther properly conducted promotion selection and interviewing, *see* 1975 Ala.Code § 25–1–1 through 25–1–9 (prohibiting age discrimination), that Luther's actions in the hiring procedure were arguably incompetent, and that all but the awareness element have been met.[7] Bonham has, however, failed to show that Regions either was aware or should have been aware of Luther's incompetence in this area. The only evidence that Bonham has evinced is the email from Brandi Kelsey to Jackie Sexon, the Regional Human Resources Officer at Regions who would have been responsible for either conducting an investigation or passing the matter on to another Regions executive for investigation. In the email, Kelsey explained to Sexon that Bonham had "expressed concern" about not having been selected for a supervisory position, but mentioned no discrimination and stated that Bonham would be making an appointment to discuss the matter with Sexon. Sexon has stated that she does not recall receiving the email, nor did she discuss the email with others at Regions. Bonham has produced no evidence that she attempted to or actually did discuss the situation with Sexon, nor, indeed, that she attempted to bring to the attention of anyone at Regions her concern that Luther was discriminating or not following company policy. Based on the content of the email, this court cannot say that it was unreasonable that Regions did not investigate Luther's promotion practices. Nor can the court hold that Regions did not exercise due care by failing to investigate Bonham's concerns. The court therefore finds that Bonham has not shown that Regions was aware or should have been aware of Luther's incompetence based on his promotions in the default services department. Bonham's claim of negligent supervision does not survive Regions's motion for summary judgment.

---

7. Of course, with these assumptions, the court has essentially reintroduced the AADEA claim

in the skin of the negligent retention tort.

### 2. Negligent–Retention Claim

Bonham also argues that Region's retention of Luther as manager injured her. Alabama law recognizes the tort of negligent retention which makes an employer liable to its employees for the negligent acts of a co-employee. *See, e.g., McDuff v. Kurn,* 233 Ala. 619, 172 So. 886, 887 (1937). An element of this tort, however, is the employer's awareness of the employee's incompetence. *See id.* Because, as the court has discussed above, Bonham has presented no evidence of this awareness, nor has she shown that Regions should have known of Luther's possible incompetence, her claim for negligent retention must also fail. In so holding, the court need not address whether Bonham has satisfied the other elements of negligent retention.

### IV. CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

(1) The motion for summary judgment, filed by defendant Regions Mortgage, Inc., on June 6, 2000, and amended on October 6, 2000, is granted in part and denied in part.

(2) Summary judgment is entered in favor of defendant Regions Mortgage, Inc., and against plaintiff Sharon E. Bonham on all of plaintiff Bonham's federal and state claims, with the exception of her age-discrimination claims, under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C.A. §§ 621–634, and the Alabama Age Discrimination in Employment Act of 1997, 1975 Ala.Code §§ 25–1–20 through 25–1–29, involving the positions given to Joe Smart and Bill Stallings.

The clerk of the court is DIRECTED to provide a copy of this order to counsel for all parties by facsimile transmittal.

---

* Regions has stated in a telephone conference held on January 12, 2001, that there are two ways that Bonham's lack of such experience is a legitimate reason for her non-selection. First, it has asserted that supervisory experience is a requirement for supervisory positions at Regions. Second, and perhaps more significantly, it has argued that despite this requirement, the company prefers to promote individuals with prior supervisory experience to positions as supervisors. Thus, Regions contends where a person without such experience vies for a supervisory position with a someone who possesses such experience, the person with the experience is preferred.

## ORDER

### Jan. 19, 2001.

This cause is now before the court on defendant Regions Mortgage, Inc.'s motion, filed January 8, 2001, to reconsider this court's partial denial of summary judgment. Regions argues that the court erred in finding that there was sufficient evidence for a reasonable jury to believe that the legitimate, nondiscriminatory reason it proffered for not promoting plaintiff Sharon E. Bonham was pretext. Regions concludes, therefore, that summary judgment should be granted as to the remaining claims in this case. For the reasons stated below, this motion will be denied.

Regions has argued that it did not promote Bonham because she lacked prior supervisory experience.* The court found that three reasons which Bonham offered to discredit this reason would enable, but not require, a reasonable jury to conclude that this reason was pretext. First, the court found that Bonham presented evidence that the relevant decision maker, Rory Luther, after perusing her file during her promotion interview, commented on her age saying that she was "getting kind of old," and "getting real old." Deposition of Sharon Bonham at 57. He also told her: "You may have to stop—stop staying up so late and partying at night." *Id.* Second, Bonham presented evidence that at least one other person, Stallings, whom Luther selected for a supervisory position that is relevant to Bonham's remaining claim, lacked such experience. And, finally, Bonham presented evidence that the requirements for supervisory positions at Regions were changed after she had been considered for the positions that remain at issue in this litigation.

Regions concedes that, for the purposes of summary judgment, the court must give credence to Bonham's evidence regarding the comments that Luther made to her in her interview. Therefore, even assuming that Regions is correct that Stallings had supervisory experience and the job requirements did not change, the court concludes that the comments that Luther made to Bonham in her promotion interview could permit, but not require, a reasonable jury to conclude that Region's proffered reason is pretext.

This is a close question. There are cases that state that "a single age-related comment, even if made by a decisionmaker may not be 'sufficient to infer discriminatory intent.'" *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir.1998) (stray remarks by decision maker not relevant to show bias). In this case, the court believes that it would not require much to demonstrate that the employer's legitimate non-discriminatory reason was not pretextual.

■ Nevertheless, this court has found no Eleventh Circuit cases that state that comments alone *cannot* show pretext. And there is Eleventh Circuit precedent that holds that the weight to be attributed to such comments depends on their "substance, context, and timing." *Damon v. Fleming Supermarkets*, 196 F.3d 1354, 1362 (11th Cir.1999) (finding that remark following termination of older employee to his replacement that "aggressive, young men" were wanted by decision maker, along with other evidence, sufficed to show pretext); *see also Beaver v. Rayonier, Inc.*, 200 F.3d 723 (11th Cir.1999) (statements by a decision maker permit a jury to infer some age bias); *Burrell v. Board of Trustees*, 125 F.3d 1390, 1393 (11th Cir. 1997) (statements by a decision maker may be used as circumstantial evidence of discriminatory motive). Accordingly, whether comments standing alone show pretext depends on whether their substance, context, and timing could permit a finding that the comments are causally related to the adverse employment action at issue.

The Eleventh Circuit Court of Appeals is in line with other Courts of Appeals in looking not to the fact of comments but to the strength of the inference of discrimination that can be drawn from them. *See, e.g., Ritter v. Hill Ñ Dale Farm, Inc.*, 231 F.3d 1039, 1043 (7th Cir.2000) (holding that ageist statements did not show pretext because "pretext is not demonstrated by isolated statements unrelated to the employment decision at issue"); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1140 (10th Cir.2000) (holding that a "stray remark" is insufficient to create a jury issue, but that "[a]ge related comments referring directly to the plaintiff can support an inference of age discrimination"); *Dominguez–Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 432 (1st Cir.2000) (holding that comments made by key decision maker in conjunction with notes regarding decision to terminate sufficed to show pretext); *Montgomery v. John Deere & Co.*, 169 F.3d 556, 560–61 (8th Cir.1999) (finding that ageist comments alone, coupled with weak showing of prima facie case did not amount to evidence of pretext).

■ What this court therefore concludes is that statements can suffice to meet the burden of showing pretext if the inference that they support can be drawn strongly enough. The court stresses that by deciding this it is not weighing the evidence that Bonham has presented, but is instead determining whether a reasonable jury could itself give sufficient weight to it. To decide this, the court must look to the substance, context and timing of the statements. *See Damon*, 196 F.3d at 1362. Bonham's deposition testimony regarding her interview with the decision maker, Rory Luther, reads:

"A: Brandi called me. I did talk with her. She told me that I would be—Rory was going to interview me.

"Q: And that's when he came to your desk and got you and y'all went in his office and talked about the job?

"A: Yes.

"Q: Tell me about—that was shortly after—That was within a week or so after you applied?

"A: Yes, maybe less than that.

"Q: Tell me to the best of your recollection sitting here today, tell me what was the substance of that conversation with you and Rory in his office?

"A: When he sat down, he looked through my file maybe a minute or so, and he said that I was getting kind of old. He didn't—He said, but you're not. much older than I am.

He said, you're getting real old. You may have to stop—stop staying up so late and partying at night.

"Q: How did that conversation come up?

"A: He just brought it up. It didn't have anything to do with the application.

"Q: Had y'all talked about partying or anything?

"A: I never discussed partying with him. I don't talk to him in that manner.

"Q: He just brought it up?

"A: He just brought it up."

Deposition of Sharon Bonham at 56:10 through 57:16. From this exchange it appears that the substance of the comment is not altogether damning. In particular, the substance of the statement is not *explicitly* about Bonham's age as a disqualification for the job. That is, it is not direct evidence such as: "Sharon, you are too old to be promoted." However, the law is clear that comments that are not direct evidence of discrimination can support an inference of discrimination. *See, e.g., Burrell,* 125 F.3d at 1393 (statements by a decision maker may be used as circumstantial evidence of discriminatory motive).

What is troubling about the comment is its timing, who made it, to whom it was directed, and about whom it was phrased. It was made *during the job interview—* specifically right after Luther had just perused Bonham's file, and, thus, while he was in the process of developing an im-pression of her as a candidate for promotion. A reasonable jury could conclude that her age struck Luther and that it was a factor that caused his decision not to promote her. Bonham's testimony that it had nothing to do with the application, seen in a light most favorable to her is not an indication that it was a statement unconnected to her application for promotion, but that it was anomalous in the context of a job interview. The second thing that is troubling about the statement is that it was made *by the relevant decision maker* who determined that Bonham should not receive the promotion. It could not have come from one more crucially placed as far as the specific employment decisions that are at issue in this case. Third, *it was made to the plaintiff* in this case, and, fourth, *it was specifically about the plaintiff* and appears clearly to convey his impression of her.

Where courts have discounted biased statements as evidence of pretext in employment cases, the reasons generally given have been that they were not made by the responsible decision maker, *see, e.g., Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 531 (10th Cir.1994), or they were made in circumstances that were either temporally remote from the adverse employment action at issue, *see, e.g., Ritter v. Hill N Dale Farm, Inc.,* 231 F.3d 1039, 1043 (7th Cir.2000) (comment made at lease six months before adverse employment action), or that they were "stray" comments, *see, e.g., Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132, 1140 (10th Cir.2000). Here, the comment does not appear to be stray because it was made by the relevant decision maker in the interview for the positions at issue; it was made to the plaintiff, and it was about her.

Accordingly, it is ORDERED that the motion for reconsideration, filed by defendant Regions Mortgage, Inc., on January 8, 2001, is denied.