Central Bank of Alabama, N.A., brought suit claiming $26,105 plus interest on a promissory note executed by defendant Lane on September 20, 1980. Lane answered the general issue and further that $14,000 of the debt was illegal and unenforceable because that amount represented monies loaned by the bank to Lane, which Lane in turn loaned to an officer of the bank, Charles Mills (Mills).
Lane also filed a counterclaim against the bank, seeking damages for the alleged negligent supervision of Mills by the bank, resulting in injury to Lane.
The trial judge severed the suit on the note and the counterclaim and tried each separately to a jury. At the close of the evidence, he directed a verdict for the bank on both claims. Lane appeals. We affirm.
In September, 1979, defendant Louis J. Lane signed a loan application for a $12,000 loan from Central Bank. The application stated that the purpose of the loan was for home improvements. Lane signed a promissory note for $12,000. Lane used $5,000 to pay a prior loan, and the balance of $7,000 was deposited in Lane's checking account at Central. Lane, on that day, wrote a check on his account, payable to an attorney, James R. Sturdivant. Mills executed a demand note to Lane for $7,000 and delivered it to Lane.
In January, 1980, Lane again went to the bank and signed a renewal note for $19,500, which stated that it was for taxes and to renew the $12,000 note. The $19,500 was deposited to Lane's account, and he wrote a check for $12,529.97, which satisfied the prior note. He then wrote a check for $6,970.03 to cash. This, too, was deposited to Sturdivant's account. Mills marked through the date of September 29, 1979, on the demand note bearing that date and substituted January 28, 1980. The original amount of $7,000 was changed to $14,000. This note was delivered to Lane.
Mills committed suicide on August 13, 1980. Approximately six weeks later, Lane again renewed the loan and executed the note upon which suit was brought. Lane sought to avoid liability on this note by contending that his payments (or loans) to Mills were illegal under 18 U.S.C. § 656 (1976), and that this alleged illegality somehow tainted the renewal note executed by Lane to Central in September, 1980, after Mills's suicide.
18 U.S.C. § 656 (1976) provides in part:
 "Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank, member bank, national bank or insured bank . . . embezzles, abstracts, purloins, or willfully misapplies any of the monies, funds or credits of such bank . . . shall be fined not more than $5,000.00 or imprisoned not more than five years, or both; . . . ."
Lane argues that Mills's conduct in "requiring customers of the bank to make loans larger than required by them and requiring payment to him of a part of the proceeds" was clearly a violation of this federal criminal statute. We need not decide whether it is or is not, because even if it were, the acts of Mills in no way vitiated Lane's obligation to the bank under the note he signed. He does not deny that he received the proceeds of the loan, and he does not show that the bank played any role in his lending Mills a part of the loan proceeds. It is somewhat anomalous that Lane would seek to avoid liability on the note because of the acts of Mills and himself. He, in effect, says that he should be relieved of any liability on the note because an illegal act in which he participated and to which the bank was not a party renders the entire transaction void. He cites no authority for this position, and we have found none.
The rule which renders unenforceable a contract founded upon illegal consideration has no application where the parties are not in pari delicto. American Life Ins. Co. v. Aladdin TempleBenefit. Association, *Page 1100 238 Ala. 512, 191 So. 903 (1939). Lane offered no evidence to show that Central was in any way involved in any misconduct with regard to the loan to him and further offered no evidence that the bank was aware of Lane's loan of part of that money to Mills.
Under these facts, we cannot say that the trial court erred in directing a verdict in favor of the bank in the suit on the note.
Lane next argues that he should have been permitted to go to the jury on his counterclaim in which he sought damages based upon the alleged negligent supervision of Mills by the bank.
Lane argues that Alabama has recognized the independent tort of negligent supervision of an employee, citing Sloss-SheffieldSteel Iron Co. v. Bibb, 164 Ala. 62, 51 So. 345 (1910), andThompson v. Havard, 285 Ala. 718, 235 So.2d 853 (1970), where we said:
 "In the master and servant relationship, the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him. Liability depends upon its being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge. It is incumbent on the party charging negligence to show it by proper evidence. This may be done by showing specific acts of incompetency and bringing them home to the knowledge of the master, or by showing them to be of such nature, character, and frequency that the master, in the exercise of due care, must have had them brought to his notice. While such specific acts of alleged incompetency cannot be shown to prove that the servant was negligent in doing or omitting to do the act complained of, it is proper, when repeated acts of carelessness and incompetency of a certain character are shown on the part of the servant to leave it to the jury whether they would have come to his knowledge, had he exercised ordinary care."
285 Ala. at 723, 235 So.2d 853.
We are mindful of this rule and the fact that this Court recognizes a cause of action against the master based upon the incompetence of the servant. The rule simply has no application under the facts of this case. Assuming Lane has been damaged by the acts of Mills, which he has not shown, he has not established that the damage occurred because of any incompetency on Mills's part for which the bank might conceivably be liable. He has not shown that he was forced to accept the loans from the bank with Mills's self-imposed conditions. He did not report Mills's conduct to the bank. He simply acquiesced in Mills's allegedly illegal and certainly unethical conduct. The law will not allow him now to recover damages from the bank.
We also hold that the trial court did not err in disallowing evidence of transactions between Mills and other customers, since it is undisputed that the first customer complaint concerning Mills's activity came to the attention of Mills's supervisor on June 10, 1980, nearly six months after the last Lane/Mills transaction and after the bank had loaned Lane an additional $6,000.
Finally, Lane contends that the trial court erred in disallowing certain testimony because it was barred by the dead man's statute, § 12-21-163, Code 1975. He concedes that in making this argument he urges a construction of that statute never before adopted by this Court. The thrust of his argument is that the dead man's statute has no application here because Lane's transaction with Mills was personal to Mills, and Mills was not acting in a representative or fiduciary relationship to the bank. Lane says his claim against the bank is based upon its initial negligence and is not based upon the acts of Mills acting in a representative capacity.
Although we do not agree with this construction of the statute, which expressly provides *Page 1101 
 "[N]o person having a pecuniary interest in the result of the action or proceeding shall be allowed to testify against the party to whom his interest is opposed as to any transaction with, or statement by, the deceased person whose estate is interested in the result of the action or proceeding or when such deceased person, at the time of such transaction or statement, acted in any representative or fiduciary relation whatsoever to the party against whom such testimony is sought to be introduced . . .,"
(emphasis added)
We need not decide the issue because we have held that Lane has not brought himself within the rule which would allow one to recover for the negligent supervision of an employee. Because this is so, the exclusion of the testimony, if error, would be harmless under the facts of this case.
We have carefully considered all of Lane's contentions, and we are compelled to agree with the trial court that the bank was entitled to a directed verdict on the note and on the defendant's counterclaim.
The judgment appealed from is affirmed.
AFFIRMED.
FAULKNER, JONES, ALMON and BEATTY, JJ., concur.