The plaintiff, Ruby Ledbetter, appeals from summary judgments entered in favor of the defendants, United American Insurance *Page 1372 
Company ("United American") and Standard Life and Accident Insurance Company ("Standard Life"), on claims of negligent supervision and failure of a duty to warn. We affirm.
Viewed most favorably to the plaintiff, the evidence submitted on the motions for summary judgment tended to show the following:
Ruby Ledbetter is a 76-year-old woman with a seventh-grade education. Frederick Fannin, an insurance agent, began calling on her in her home in 1985 to sell insurance to her and her husband, Clifton Ledbetter. As a representative of several insurance companies, Fannin sold insurance policies to the Ledbetters between 1986 and 1991. During some of his visits, Fannin spoke to Mrs. Ledbetter about investing in his companies, Paffco, Inc., and Opelika Auto Auction.[1] Patricia Ann Adams, a/k/a Pat Fannin, an associate of Frederick Fannin, accompanied him to Mrs. Ledbetter's home in July 1987 and on that occasion told her that Paffco was a good company to invest in. Between July 1987 and March 1991, Ruby Ledbetter invested over $110,000 or lent it to Mr. Fannin or his companies.[2]
(Affidavit of Ruby Ledbetter, C.R. 442-43).
United American and Standard Life each licensed Fannin and Adams to sell insurance in February 1986. Standard Life terminated both Fannin and Adams in July 1989 for low production. United American terminated Fannin in November 1989. Fannin's insurance license was revoked by the Alabama Department of Insurance on August 7, 1990.
Fannin sold Standard Life policies to the Ledbetters; they were issued in April 1986 and lapsed in April 1990. On March 29, 1991, Fannin sold the Ledbetters United American policies, which were issued in April 1991; although these policies were solicited by Fannin, Adams is shown as the selling agent on the insurance applications.[3]
Mrs. Ledbetter began investing with Fannin on July 16, 1987. Her last investment with Fannin occurred on November 21, 1991. Initially, Fannin made periodic interest payments to Mrs. Ledbetter on her investments with him. Fannin began to fall behind in his payments to her by early 1991, and stopped paying altogether after December 1991.
On May 21, 1992, Ruby Ledbetter sued Fannin, Adams, Opelika Auto Auction, Paffco, Standard Life, United American, and Atlantic and Pacific Life Insurance Company of America ("Atlantic and Pacific"). The complaint alleged that Adams and Fannin committed fraud while they were agents of the other defendants; it also alleged negligent hiring, negligent employment, negligent supervision, and failure on the part of the defendant insurance companies of a duty to warn policyholders that Fannin's insurance license had been revoked for dishonest practices. United American and Standard Life each moved for a summary judgment.
Ledbetter opposed the summary judgment motions with, among other things, her affidavit stating that Fannin had gained her trust because he was an insurance agent. United American and Standard Life moved to strike her affidavit because it contradicted her deposition testimony that her trust in Fannin had nothing to do with the fact that he was licensed with any insurance companies. The trial court stated, in its order granting the summary judgment motions, that it had not considered the portions of Ledbetter's affidavit that directly contradicted, without explanation, *Page 1373 
her sworn deposition testimony. Doe v. Swift, 570 So.2d 1209,1214 (Ala. 1990), citing Robinson v. Hank Roberts, Inc.,514 So.2d 958, 961 (Ala. 1987). The court made the judgments final under Rule 54(b), Ala.R.Civ.P.[4] Ledbetter appeals from the summary judgments.
Whether there is a duty is the threshold inquiry in a negligence case. "It is settled that for one to maintain a negligence action the defendant must have been subject to a legal duty." Morton v. Prescott, 564 So.2d 913, 915 (Ala. 1990). "The trial court must determine whether a duty existed and, if so, the extent of that duty." Perkins v. Dean, 570 So.2d 1217,1220 (Ala. 1990). Thus, whether the appellant insurance companies are liable to Ledbetter depends on whether they owed a legal duty of due care to her at the time of Fannin's wrongful actions. "The ultimate test of the existence of a duty to use due care is found in the foreseeability that harm may result if care is not exercised." Buchanan v. MergerEnterprises, Inc., 463 So.2d 121, 126 (Ala. 1984). Because we conclude that the insurance companies owed no duty to Ruby Ledbetter at the time of the alleged fraud, we affirm the summary judgments.
Ledbetter admits that the actions of Fannin and Adams in convincing her to invest over $110,000 with Fannin were outside the scope of their employment with the defendant insurance companies. Thus, she does not rely on the theory of respondeat superior to hold the insurance companies liable for Fannin's alleged intentional tort of fraud. See Joyner v. AAA CooperTransportation, 477 So.2d 364, 365 (Ala. 1985) (agent's wrongful acts must be within line and scope of employment to hold employer liable under respondeat superior). Instead, Ledbetter seeks to hold the appellants liable under a theory of negligent supervision, based on case law and Restatement (Second) ofAgency § 213 (1957).[5]
Ledbetter also argues that insurance companies certifying the good character of their agents under § 27-8-5(b), Ala. Code 1975, should be held to some minimal standards of supervision under Chapter 8 of Title 27 of the Code. Section 27-8-5(b) requires that an insurer investigate the background and character of its prospective agents and certify in the application for the agent's license that he or she is trustworthy and qualified to sell insurance to the public. Chapter 8 provides administrative remedies to the Commissioner of the Alabama Department of Insurance ("ADI") to enforce the goals of the certification provision. § 27-8-16(a). It is not intended to impose an additional burden of supervision on insurers, inuring to the benefit of policyholders, beyond that existing under the common law.
This Court recently considered a negligent supervision claim in Perkins v. Dean, 570 So.2d 1217, 1219-20 (Ala. 1990), where we affirmed a summary judgment for the employer. There, we held that the plaintiffs, to avoid a summary judgment on their negligent supervision claim against an employer for harm done to them by its former employee, "must show or demonstrate that [the employer] had notice or knowledge (actual or presumed) of [the employee]'s alleged incompetency for [the employer] to be held responsible; demonstrating liability on [the employer]'s part requires affirmative proof that [the employee]'s alleged incompetence was actually known to [the employer] or was discoverable by [the employer] if it had exercised care and proper diligence." Id. We did not *Page 1374 
address whether such notice existed, however, because the undisputed facts of the case established that the employer owed no duty to the plaintiffs, because the alleged harm occurred after the employee had resigned his employment. Id. at 1218-20.
We likewise need not address whether such notice existed in this case, because there is no evidence in the record that the insurance companies knew or should have known that Fannin or Adams intended to defraud Ledbetter before Fannin stopped paying her back on her investments in 1991, and the undisputed facts establish that neither insurance company owed Ledbetter a legal duty that would make it liable to her for the allegedly fraudulent actions of Fannin.
Fannin's alleged fraud occurred when he convinced Mrs. Ledbetter to invest in his enterprises between 1987 and 1991 by persuading her that these would be wise investments. The alleged harm occurred when, in 1991, he stopped paying Mrs. Ledbetter the return on her investments and the interest on the loans she had made to him; this occurred after both insurance companies had terminated his employment. The undisputed facts establish that Standard Life terminated Fannin and Adams from employment in July 1989, and that Ledbetter's policy with Standard Life lapsed in April 1990, at which time Fannin was still repaying Mrs. Ledbetter on her loans and investments. Thus, because Fannin and Adams were no longer its agents, there was no duty owed by Standard Life to Ruby Ledbetter at the time of the alleged harm. Therefore, we affirm the summary judgment in favor of Standard Life.
United American fired Fannin in November 1989, but retained Adams as its agent. Although Ledbetter had an insurance policy in effect with United American at the time of Fannin's allegedly fraudulent act, the legal duty owed by United American to Ledbetter under that policy was limited to the insurance provisions of that policy, and Fannin's failure to repay Ledbetter's investments was completely unrelated to, and far outside the scope of, the insurance policy.
Fannin was not an agent of United American at the time of his default; there is no evidence in the record that Adams, although still a United American agent at the time, was responsible for or was involved in Fannin's default. Therefore, United American owed no duty of care to Ledbetter that would make it liable for the alleged torts of Fannin, when those torts were unrelated to the business of insurance, and we affirm the summary judgment in favor of United American.
AFFIRMED.
MADDOX, HOUSTON, KENNEDY and INGRAM, JJ., concur.
[1] No evidence indicates that Standard Life or United American was involved in, or was aware of, these investments. Mrs. Ledbetter testified in her deposition that Fannin never told her that the investments had anything to do with the insurance companies and that she understood that the investments and loans to Fannin had nothing to do with any insurance company. Fannin told Mrs. Ledbetter before she invested any money with him that Paffco was a loan company, and he later told her that he wanted to purchase Opelika Auto Auction. Clifton Ledbetter was never present during discussions about investing money with Fannin or his companies.
[2] Adams allegedly indorsed a $5000 check made out to "Pat Fannin" that Ruby Ledbetter gave to Frederick Fannin on November 21, 1991.
[3] Ruby Ledbetter indicated in her deposition that Fannin sold them these policies and that she never spoke with Adams about them. The premiums for the United American policies were apparently deducted from $8650 that Mrs. Ledbetter invested with Fannin on March 29, 1991.
[4] Atlantic and Pacific was dismissed as a defendant from this action. Ledbetter's claims against Fannin, Adams, Paffco, and Opelika Auto Auction are still pending in the trial court.
[5] Ledbetter relies in her brief on the following subsections of § 213:
"Principal Negligent or Reckless
 "A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:
 "(a) In giving improper or ambiguous orders or in failing to make proper regulations; or
 "(b) In the employment of improper persons or instrumentalities in work involving risk of harm to others;
"(c) In the supervision of the activity; or
 "(d) In permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control."