Barbara Sanders, as mother and next friend of Kristen Danielle Sanders and Jessica Monique Sanders, sued Shoe Show, Inc., University Mall ("the Mall"), and Aronov Realty, alleging that the defendants were liable for damages, based on claims of false imprisonment, civil rights violations under 42 U.S.C. § 1983, intentional infliction of emotional distress, negligent and wanton hiring and supervision of employees, consumer discrimination, and negligence. After preliminary discovery motions were filed, the defendants filed motions for a summary judgment as to all of the plaintiff's claims. The plaintiff responded, and the summary-judgment motions were argued before the trial court. On August 6, 1999, the trial court entered a summary judgment for the defendants as to all of the plaintiffs' claims.
The plaintiff appealed to the Supreme Court of Alabama; that court transferred the appeal to this court, pursuant to §12-2-7, Ala. Code 1975.
The record reveals that on July 25, 1997, Sanders bought two pairs of shoes for her daughters at the Shoe Show in the Mall in Tuscaloosa. On the morning of July 30, 1997, Sanders and her daughters, accompanied by Sanders's sister and niece, returned to the Mall. They walked around the Mall, shopping and performing various errands. During this time, Sanders's daughters went into the Shoe Show and also went into a nearby music store. Sometime after the daughters first entered the Shoe Show, Angela Patton, a store employee, discovered an empty shoe box in the area of the store where Sanders's daughters had been. Patton testified that she noticed that one of the daughters had left the store wearing a new pair of shoes. Patton reported the incident to Rita Champion, the store manager, and Champion reported the incident to Jeffrey Snyder, an off-duty Tuscaloosa police officer who was employed by the Mall as a security guard. Snyder informed Champion *Page 822 
that he could not arrest anyone without probable cause, but that he would question Sanders's daughters about the shoes.
Later that morning, Sanders met her daughters, her sister, and her niece and returned to the Shoe Show. Once inside the store, Kristen, Jessica, and their cousin separated from Sanders and her sister in order to look at different shoes. Kristen went to the front of the store to examine some shoes that interested her. At that time, Kristen was approached by Snyder. Sanders and Kristen testified that Snyder questioned Kristen about where she got the shoes she was wearing and asked her to take off the shoes. Snyder denied that he ever spoke directly to Kristen. It is undisputed that Sanders and her sister confronted Snyder, Champion, and Patton in a loud verbal altercation that involved some profanity. During the altercation, Sanders presented a receipt to Snyder, who took it and returned it; Snyder eventually informed Sanders and her sister that they should leave the store or be liable to be arrested for disorderly conduct. Sanders testified that Snyder threatened her with jail.
It is undisputed that no one was arrested and that no one was prevented from leaving the store. However, Kristen testified that Snyder was wearing the uniform of a police officer and that she had felt "blocked" from leaving the store. Sanders testified that she had observed Snyder and a store employee standing in front of her daughters at the front of the store. The evidence is undisputed, however, that Kristen was not attempting to leave the store at the time the altercation began. After the altercation, Sanders instructed Kristen to leave the store and to remove the shoes; Sanders returned the shoes to the store and received a full refund for the amount shown on the receipt, $59.99. Sanders later filed a complaint with the Mall manager; he apologized to Sanders and gave her $75.00 in gift certificates.
Our standard of review of summary judgments is settled:
 "A motion for summary judgment tests the sufficiency of the evidence. Such a motion is to be granted when the trial court determines that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The moving party bears the burden of negating the existence of a genuine issue of material fact. Furthermore, when a motion for summary judgment is made and supported as provided in Rule 56, [Ala.R.Civ.P.,] the nonmovant may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Proof by substantial evidence is required."
Sizemore v. Owner-Operator Indep. Drivers Ass'n, Inc.,671 So.2d 674, 675 (Ala.Civ.App. 1995) (citations omitted). Moreover, in determining whether a summary judgment was properly entered, the reviewing court must view the evidence in a light most favorable to the nonmovant. Long v. Jefferson County, 623 So.2d 1130, 1132
(Ala. 1993). No presumption of correctness attaches to a summary judgment, and our review is de novo. Hipps v. Lauderdale CountyBd. of Educ., 631 So.2d 1023, 1025 (Ala.Civ.App. 1993) (citingGossett v. Twin County Cable T.V., Inc., 594 So.2d 635 (Ala. 1992)).
Sanders argues generally that the trial court erred in entering the summary judgment for the defendants. Accordingly, we consider the propriety of the summary judgment with respect to each of the plaintiff's claims in light of the foregoing standard. With respect to the plaintiff's claim of false imprisonment, this court noted the proof requirements of that claim in Grant v.Dolgen Corp., 738 So.2d 892, 894 (Ala.Civ.App. 1998):
 "`False imprisonment consists of the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty. Ala. Code 1975, § 6-5-170. For there to be *Page 823 
a false imprisonment, there must be some direct restraint of the person; however, it is not necessary that there be confinement in a jail or a prison. Any exercise of force, or the express or implied threat of force, by which in fact the other person is deprived of his liberty, compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an imprisonment.'"
(quoting Big B, Inc. v. Cottingham, 634 So.2d 999, 1001 (Ala. 1993)).
After carefully reviewing the record, even in a light most favorable to the plaintiff, we must agree that the plaintiff did not present substantial evidence creating a genuine issue of material fact as to whether her daughters were ever directly restrained. Although Kristen testified that she would have hesitated to leave when Snyder first approached her, the evidence is undisputed that she never intended to leave. Moreover, the evidence is also undisputed that neither Kristen nor Jessica was ever restrained and that they left the store exactly when they chose to leave. Under these circumstances, we conclude that the trial court properly entered the summary judgment for the defendants on Sanders's claim of false imprisonment.
Sanders next contends that the trial court erred in entering the summary judgment for the defendants on her claims of racial discrimination in violation of her daughters' constitutional rights under the Fifth, Eighth, andFourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. We agree with the trial court that "[t]o state a claim under § 1983, the plaintiff must allege facts constituting a deprivation of a constitutional right, under color of state law." C.B. v.Bobo, 659 So.2d 98, 102 (Ala. 1995). See also Griffith v.Johnston, 899 F.2d 1427 (5th Cir. 1990); Warren v. Birmingham Bd.of Educ., 739 So.2d 1125 (Ala.Civ.App. 1999). Similarly, a plaintiff's claims that he or she was deprived of constitutional rights requires a showing that the deprivation took place as a result of some action by the state. Lugar v. Edmondson Oil Co.,457 U.S. 922 (1982).
It is undisputed that Snyder and the employees of the Shoe Show were acting in their capacity as private individuals and that no state action took place in the altercation. Further, no evidence in the record supports the inference that any of the defendants in this case were acting on behalf of the state. We conclude that the trial court properly entered the summary judgment for the defendants on the plaintiff's claims based on the United States Constitution and § 1983. Sanders also claims that the trial court erred in entering the summary judgment for the defendants as to her claim of intentional infliction of emotional distress, also known as the tort of outrage. American Road Serv.Co. v. Inmon, 394 So.2d 361 (Ala. 1980). Our Supreme Court has discussed the elements of the tort of outrage as follows:
 "In American Road Service Co. v. Inmon, 394 So.2d 361, 365 (Ala. 1980), this Court set forth the following elements for the tort of outrage: (1) that the defendant's conduct was intentional or reckless; (2) that it was extreme and outrageous; and (3) that it caused emotional distress so severe that no reasonable person could be expected to endure it. We stated:
 "`The emotional distress [resulting from the conduct] must be so severe that no reasonable person could be expected to endure it. Any recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme. . . . By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.' *Page 824 
"`Inmon, 394 So.2d at 365 (citations omitted).'"
Jenkins v. United States Fid. Guar. Co., 698 So.2d 765, 768
(Ala. 1997).
Sanders's claim of outrage in this case is that the defendants employed a security guard who was so unskilled in dealing with people that he caused Kristen and Jessica extreme emotional distress. We agree with the trial court that even if every assertion made by Sanders concerning Snyder's conduct is taken as true, that evidence would not constituted substantial evidence indicating that Snyder's actions were "so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Inmon, 394 So.2d at 365. The trial court properly entered the summary judgment for the defendants as to Sanders's claim of outrage.
Sanders also argues that the trial court erred in entering the summary judgment for the defendants on her claim of negligent or wanton hiring and supervision. Specifically, Sanders argues that the defendants were negligent in the hiring and training of Snyder.
 "The elements of negligent supervision in Alabama have been discussed by our supreme court in Lane v. Central Bank of Alabama, N.A., 425 So.2d 1098 (Ala. 1983):
 "`In the master and servant relationship, the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him. Liability depends upon its being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge. It is incumbent on the party charging negligence to show it by proper evidence.'
"Id., at 1100."
Collins v. Wilkerson, 679 So.2d 1100, 1103 (Ala.Civ.App. 1996).
Under Lane and Collins, a critical element of Sanders's claim of negligent or wanton hiring and supervision is proof that the defendants actually knew, or should have discovered in the exercise of due diligence, that Snyder was likely to be abusive to Mall patrons. The record contains no evidence to support an inference that the defendants knew or should have known that Snyder would act improperly based on a suspicion of shoplifting. Further, no evidence in the record shows that Snyder had a history of improper conduct similar to the conduct alleged by Sanders. We conclude that the trial court properly entered the summary judgment for the defendants on Sanders's claim of negligent or wanton hiring and supervision.
Finally, we note that Sanders also stated a general claim of negligence. However, as the trial court noted, she made no allegation that the decision to approach Kristen was negligent. In fact, a careful examination of the record, in the context of Sanders's claim, shows no allegation of the breach of a duty of care, which is required in the proof of a negligence claim. SeeLollar v. Poe, 622 So.2d 902 (Ala. 1993). Accordingly, the summary judgment for the defendants as to this claim was proper.
The summary judgment as to all of Sanders's claims is due to be affirmed.
AFFIRMED.
Yates, Monroe, Crawley, and Thompson, JJ., concur. *Page 825