867 So.2d 1065 (2003)
VOYAGER INSURANCE COMPANIES et al.
v.
Jackie B. WHITSON and Dannie Hall.
1000678.
Supreme Court of Alabama.
May 9, 2003.
*1066 Michael L. Bell and William H. King III of Lightfoot Franklin and White, LLC, Birmingham; and Frank G. Burt of Jorden Burt, LLP, Miami, Florida, for appellants.
Lloyd W. Gathings and Misha Y. Mullins of The Gathings Law Firm, Birmingham; Ralph D. Gaines of Gaines, Gaines, Rasco & Little, P.C., Talladega; Harvey B. Campbell, Jr., of Campbell & Campbell, Talladega; Huel M. Love, Jr., of Love, Love & Love, Talladega; William L. Utsey of Utsey & Utsey, Butler; and Donald W. Lang, Sylacauga, for appellees.
PER CURIAM.
Voyager Insurance Companies, Voyager Guaranty Insurance Company, Voyager Life and Health Insurance Company, Voyager Life Insurance Company, Voyager Group, Inc., and Voyager Property and Casualty Insurance Company (hereinafter collectively referred to as "Voyager") appeal from a class-certification order obtained by Jackie Whitson and Dannie Hall (hereinafter collectively referred to as "the customers"), holders of either Voyager credit-life or credit-property insurance, in an action alleging that the premiums Voyager charged for the insurance were improperly calculated on the total of the payments or on some other amount greater than the amount actually financed. We vacate the class-certification order and remand the case.

Facts and Procedural History
Voyager underwrites and sells insurance for credit transactions.[1] Voyager sold credit-property insurance and credit-life insurance through retailers, rent-to-own businesses, and finance companies in Alabama. The insureds under those policies were the credit customers of the retailers, rent-to-own businesses, and finance companies. After the credit customers financed their loans with one of the aforementioned entities, the amount of the Voyager premiums were added to the amount financed in their loan contracts.
The retailers and finance companies who sold Voyager credit-life insurance and credit-property insurance to their customers were acting as agents of Voyager. Those retailers and finance companies entered into agency agreements with Voyager, pursuant to which they received a commission for writing the insurance coverage. Voyager also obtained from the State of Alabama licenses to sell insurance for the various employees of the retailers and finance companies. Voyager provided general training to the retailers and finance companies and each program was designed for the needs of the entity being trained. The retailers and finance companies then provided their own program to train their salespersons to offer Voyager insurance to their customers. The salespersons would then sell Voyager credit-life and credit-property insurance to customers by making oral sales presentations. Those presentations included information on, among other things, the availability of the product, *1067 the rate of credit insurance, and the coverage provided by the Voyager policies.
Thomas McGraw, president of Voyager,[2] testified that Voyager received approval from the State Department of Insurance for all credit-life insurance rates and for the forms it used in Alabama during the relevant period. McGraw testified that Voyager used the "total of payments" method of rating credit-life insurance until May 1996, when it began to rate credit-life insurance on the modified "net plus one payment" formula.
McGraw likewise testified that Voyager received approval from the State Department of Insurance for all credit-property insurance rates and forms used in Alabama during the relevant period. McGraw testified that Voyager authorized the rating of credit-property insurance on the "total of payments" method, so that the premiums were calculated on the total amount of the payments, an amount obviously greater than the amount financed. McGraw testified, however, that the premiums on Voyager's credit-property insurance were rated in various ways, depending on the nature of the transaction between the creditor and the borrower and on the borrower's purchase election. For example, McGraw testified that consumer finance companies typically write single-interest coverage that protects only the loan and the creditor's interest and that retailers generally write dual-interest coverage that protects both the borrower and the retailer. McGraw also testified that retailers use varying methods to calculate premium amountssome use the actual value of goods, and others use the total of the payments.
In October 1993, Jackie Whitson purchased a Voyager credit-life insurance policy when she secured an installment loan from Central Finance, Inc., in Ashland. The policy's premium was calculated on the total payments of the loan, not the amount financed. On December 22, 1993, Whitson purchased another Voyager credit-life insurance policy when she secured an installment loan from The Financial Store, Inc., in Talladega. This policy premium was calculated by the total-of-payments method. Whitson obtained another Voyager credit-life insurance policy in Anniston on December 23, 1993, through Columbus Finance Company of Anniston. This policy premium was also calculated using the total-of-payments method.
Dannie Hall entered into a loan transaction with Columbus Finance Company of Talladega in July 1992. Columbus Finance Company charged Hall $17.76 for a Voyager credit-property insurance policy. This premium was calculated based on the total payments under the loan. Hall obtained an additional loan from Columbus Finance Company in December 1992. Columbus Finance Company charged Hall $17.31 for Voyager credit-property insurance; the premium was calculated on the total payments of the loan. Hall purchased a Voyager credit-property insurance policy and a Voyager credit-life insurance policy from Lorch[3] when he secured an installment loan in March 1994. The premium payments were $8.68 for the credit-property insurance and $3.56 for the credit-life insurance; both premiums were calculated by the total of payments of the loan. Hall bought another Voyager credit-property insurance policy from Lorch in May 1994. The premium of $12.61 was calculated on the total payments of the loan.
*1068 On June 20, 1994, Jackie Whitson and Kathy Ann Ellen sued Voyager in the Marengo Circuit Court on behalf of a class of "individuals who, during the course of executing a consumer loan agreement in Alabama, have purchased a policy of Credit Property Insurance and/or a policy of Non-Filing Insurance issued and/or serviced by the defendants [Voyager]." The Marengo Circuit Court entered an order conditionally certifying the class. In July 1994, Voyager removed the case to the United States District Court for the Southern District of Alabama. That court then transferred the case to the United States District Court for the Northern District of Alabama. In August 1998, Voyager filed a "Renewed Motion to Transfer," and the case was transferred to the Talladega Circuit Court in 1999.
The complaint has been amended four times, among other things, to change class representatives and legal theories.[4] As last amended, the complaint named Rena Yates, Whitson, and Hall as class representatives and contained 11 counts. Yates was ultimately dismissed as a named plaintiff for personal reasons not connected to the merits of certification. On April 12, 2000, Voyager filed a motion for a summary judgment, which is pending. In a partial class action settlement agreement, the parties settled six of the claims, those pertaining to "nonfiling insurance" and "involuntary-unemployment insurance."[5] The customers moved for class certification as to the five remaining claims: fraud, deceit, and fraudulent suppression in the sale of credit-life insurance; fraud, deceit, and fraudulent suppression in the sale of credit-property insurance; negligent or wanton hiring and supervision of agents selling credit-life and credit-property insurance; unjust enrichment in the sale of credit-life insurance; and unjust enrichment in the sale of credit-property insurance.
An evidentiary hearing was held on June 21, 2000, and August 25, 2000. On December 1, 2000, the trial court issued the certification order, which certified the class for the negligent- or wanton-hiring-and-supervision and unjust-enrichment claims pursuant to Rule 23(b)(3), Ala. R. Civ. P., but denied certification of the claims for fraud, deceit, and fraudulent suppression. The order described the certified class and the claim period as follows:
"Any Alabama residents who, during the course of executing a consumer loan agreement in Alabama, have been charged for or paid premiums for credit property insurance and/or credit life insurance issued and/or serviced by, [Voyager]. The Class shall have two subclasses consisting of the following:
"`Credit Property Insurance Subclass': All individuals ... residing in the State of Alabama at the time of the transaction, who, prior to the date of the Court's class certification order, (1) entered into a loan or sales financing agreement with one or more creditors which were agents of [Voyager]; (2) were charged premiums for credit property insurance in connection with the loan or sales financing agreement; and (3) such credit property insurance was sold, underwritten and/or issued by [Voyager]; and (4) the premiums were calculated on the total of payments or some other amount greater than the amount financed; provided that the
*1069 Credit Property Insurance Subclass shall not include any individual:
"(a) whose transaction was with Farmer Furniture Company and was included in the settlement in Whitson v. Wharehouse Home Furnishings Distributor, d/b/a Farmers Furniture, in the Circuit Court for Talladega County, Alabama;
"(b) whose transaction was with Heilig-Meyers Furniture Company
"(c) who has, as of the date upon which the Court enters a final judgment in this action, settled or released claims, or obtained a judgment, against [Voyager] based upon the sale, underwriting, or issuance of credit [property] insurance in the State of Alabama; or
"(d) who is deceased or has filed a petition under the bankruptcy laws of the United States under which any of the creditor agents of [Voyager] was a creditor at the time of the certification of the class described herein or at the time of any Final Judgment entered.
"`Credit Life Insurance Subclass': All individuals ... residing in the State of Alabama at the time of the transaction, who, prior to June 19, 1996, (1) entered into a loan or sales financing agreement with one or more creditors which were agents of [Voyager]; (2) were charged premiums for credit life insurance in connection with the loan or sales financing agreement; and (3) such credit life insurance was sold, underwritten and/or issued by [Voyager]; and (4) the premiums were calculated on the total of payments or some other amount greater than the amount financed; provided that the Credit Life Insurance Subclass shall not include any individual:
"(a) whose transaction was with Farmer Furniture Company and was included in the settlement in Whitson v. Wharehouse Home Furnishings Distributor, d/b/a Farmers Furniture, in the Circuit Court for Talladega County, Alabama;
"(b) whose transaction was with Heilig-Meyers Furniture Company
"(c) who has, as of the date upon which the Court enters a final judgment in this action, settled or released claims, or obtained a judgment, against [Voyager] based upon the sale, underwriting, or issuance of credit life insurance in the State of Alabama; or
"(d) who is deceased or has filed a petition under the bankruptcy laws of the United States under which any of the creditor agents of [Voyager] was a creditor at the time of the certification of the class described herein or at the time of any Final Judgment entered.
"....
"[T]he class period for the `Credit Property Insurance Subclass' claims shall be from two years prior to the filing of this case (June 8, 1992) to [December 1, 2000], and the class period for the `Credit Life Insurance Subclass' claims shall be from two years prior to the filing of this case (June 8, 199[2]) to June 19, 1996."
Voyager appeals pursuant to § 6-5-642, Ala.Code 1975, authorizing an immediate appeal of a class-certification order.

Rule 23(b)(3) Criteria
In order to obtain certification of a class, a plaintiff must establish all of the criteria set forth in Rule 23(a), Ala. R. Civ. P., and one of the criteria set forth in Rule 23(b). Rule 23(a) provides:
"(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is *1070 impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."
Rule 23(b) provides as follows:
"An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
"(1) the prosecution of separate actions by or against individual members of the class would create a risk of
"(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
"(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
"(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."
The trial court, although declining to certify a class as to the fraud, deceit, and fraudulent-suppression claims found[6]:
"The elements of Plaintiffs' claims for negligent or wanton hiring and supervision of agents selling credit property insurance [and credit-life insurance] are:
"`A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:
"`(a) In giving improper or ambiguous orders or in failing to make proper regulations; or
"`(b) In the employment of improper persons or instrumentalities in work involving risk of harm to others;
"`(c) In the supervision of the activity; or
"`(d) In permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or *1071 with instrumentalities under his control.'

"Ledbetter v. United American Insurance Co., 624 So.2d 1371, 1373 n. 5 (Ala. 1993). In the present case, there are common issues of law and fact on all the elements of this tort based upon the testimony of Thomas McGraw that: 1) Voyager did not instruct their agents to tell the customers that credit property insurance was calculated on the total of payments and he has no knowledge that agents ever gave such information to the customers; and 2) that Voyager did not instruct its agents to tell customers that the Alabama law did not allow premiums to be calculated on the total of payments and he has no knowledge that the agents ever gave such information to customers."
Voyager argues that the customers failed to satisfy the requirements of both Rule 23(a) and Rule 23(b)(3) as to their negligent- or wanton-hiring-and-supervision claim and unjust-enrichment claims. Voyager contends that Rule 23(b)(3) is not satisfied because numerous issues predominate and make the class unmanageable. A trial court's class-certification order will not be disturbed without a showing that the trial court exceeded the permissible limits of its discretion in entering the order. General Motors Acceptance Corp. v. Dubose, 834 So.2d 67, 70 (Ala.2002).
We have held that a trial court exceeded the permissible limits of its discretion in certifying a class action when the party seeking the class certification failed to produce sufficient evidence to meet the requirements of Rule 23. See, e.g., Reynolds Metals Co. v. Hill, 825 So.2d 100 (Ala.2002); Compass Bank v. Snow, 823 So.2d 667 (Ala.2001). Therefore, "we must consider the sufficiency of the evidence submitted by the plaintiff[s]." Compass Bank, 823 So.2d at 672. We also recognize that "`sometimes it may be necessary for the court to probe beyond the pleadings before coming to rest on the certification question.'" Alfa Life Ins. Corp. v. Hughes, 861 So.2d 1088, 1099 (Ala.2003) (quoting Johnston v. HBO Film Mgmt., Inc., 265 F.3d 178, 188 (3d Cir.2001). We conclude that the evidence presented is insufficient to satisfy the requirements of Rule 23(b)(3); consequently, Voyager's arguments regarding the requirements of Rule 23(a) are pretermitted.

A. Predominance
"The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). In considering whether questions of law or fact common to the class members predominate over questions applicable only to individual class members, a court must evaluate "what value the resolution of the class-wide issue will have in each class member's underlying cause of action." Rutstein v. Avis Rent-A-CarSys., Inc., 211 F.3d 1228, 1234 (11th Cir.2000). Courts examine the substantive law applicable to the claims and determine whether the plaintiffs presented sufficient proof that common questions of law or fact predominate over individual claims. See Ex parte Green Tree Fin. Corp., 723 So.2d 6 (Ala.1998); Smart Prof'l Photocopy Corp. v. Childers-Sims, 850 So.2d 1245 (Ala.2002).
The customers allege in their complaint that Voyager negligently or wantonly hired and/or supervised its agents and that that negligent or wanton hiring and/or supervision resulted in wrongful conduct comprising fraudulent suppression, fraud, and deceit in the sale of Voyager credit-property and credit-life insurance. The customers argue that common issues do predominate as to their negligent- or wanton-hiring-and-supervision *1072 claim because, they argue, the claim is based on Voyager's common course of conduct of charging premiums based on the total of payments under the loan installment contracts the customers had with Voyager's agents, as opposed to charging premiums based upon the amount financed under the installment contracts.[7] See Cheminova America Corp. v. Corker, 779 So.2d 1175, 1181 (Ala. 2000) (quoting trial court's order, which stated that common issues predominate where "`a common course of conduct has been alleged arising out of a common nucleus of operative facts'"). The customers contend that their claim meets the requirements of Rule 23(b)(3) because: 1) potential class members would have little or no interest "in individually controlling the prosecution or defense of separate actions," Rule 23(b)(3)(A); 2) at the time they submitted their briefs to this Court, no other cases in Alabama had been "already commenced by or against members of the class" regarding similar credit-property or credit-life insurance, Rule 23(b)(3)(B); 3) the concentration of their claim in Talladega County would result in judicial economy, Rule 23(b)(3)(C); and 4) the calculation of damages for each member of the class could be accomplished by a mathematical calculation, Rule 23(b)(3)(D).
Voyager contends that its alleged failure to disclose to individual customers the methods of determining the premiums to be charged for the credit-life and credit-property insurance is the conduct underlying the customers' negligent-or wanton-hiring-and-supervision claim. Voyager argues that the customers would have to prove that the alleged oral misrepresentations or omissions were made to each class member in order to maintain the negligent or wanton-hiring-and-supervision claim. Voyager asserts in its brief to this Court that this would require an evidentiary demonstration by each class member of, among other things,
"his or her knowledge of the rating of credit life and property insurances, ... [his or her] motivation for purchasing such insurance, what he or she was told concerning the insurance premiums and coverages by the creditor's salespersons, whether he or she relied on the alleged disclosures or omissions, and whether such reliance was reasonable or justifiable under the circumstances prevailing with regard to that class member."
Voyager contends that each class member would be required to offer proof as to the individual salespersons the class member encountered and of the content of the communications between the salesperson and the class member. Voyager contends that this would result in the trial court's holding "individual mini-trials" where common questions of law or fact do not predominate.
Generally, the predominance requirement of Rule 23(b)(3) is not met in cases that involve both oral and written misrepresentations. Ex parte Household Retail Servs., Inc., 744 So.2d 871 (Ala.1999). Because of our determination that there is a lack of commonality based upon factual issues regarding reliance, we do not reach the question whether this case fits within the exception to the general rule recognized in Householdwhen "no material variation exists" between the oral statements made to the class members or between the oral and written statements made to the class members. Ex parte Household Retail Servs., Inc., 744 So.2d at 878.
*1073 The relevance of reliance stems from the significance of the underlying conduct of the person allegedly hired or supervised. The customers argue that Ledbetter v. United American Insurance Co., 624 So.2d 1371, 1373 n. 5 (Ala.1993), provides the elements of negligent or wanton supervision and that a showing of an agent's incompetency is not required. However, Ledbetter does not set out the elements of negligent or wanton supervision. Ledbetter addresses only the requirement that a plaintiff "`must show or demonstrate that [the employer] had notice or knowledge (actual or presumed) of [the employee]'s alleged incompetency for [the employer] to be held responsible.'" 624 So.2d at 1373 (quoting Perkins v. Dean, 570 So.2d 1217, 1219-20 (Ala.1990)). The elements of a negligent- or wanton-hiring-and-supervision claim cited in the trial court's class-certification order and by the customers are merely mentioned in a footnote describing Ledbetter's theory of negligent supervision.
The elements of negligent supervision were addressed in Lane v. Central Bank of Alabama, N.A., 425 So.2d 1098 (Ala.1983), as follows:
"`In the master and servant relationship, the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him. Liability depends upon its being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge. It is incumbent on the party charging negligence to show it by proper evidence.'"
425 So.2d at 1100 (emphasis added); see also Sanders v. Shoe Show, Inc., 778 So.2d 820, 824 (Ala.Civ.App.2000). A party alleging negligent or wanton supervision and hiring must also prove the underlying wrongful conduct of employees. Stevenson v. Precision Standard, Inc., 762 So.2d 820 (Ala.1999).
The record before us includes that Voyager, through its president, has stated that no agent was ever instructed to tell customers that Voyager credit-property insurance was calculated on the total of payments and that Voyager is unaware of that information's being given to its customers. Also, according to the record, Voyager did not instruct its agents to tell customers that Alabama law did not allow premiums to be calculated on the total of payments, and it has no knowledge that the agents ever gave that information to customers. We also have nothing other than speculation to suggest that a single agent gave that information to a single customer. We have no affidavits from agents or sales representatives contradicting the impression of silence on this central issue. And, in light of those omissions from the record, the customers' argument that the sales representatives were silent on this issue because they were negligently supervised is largely undisputed. Furthermore, we have no evidence as to any standardized representations on other aspects of the sale of the credit-life and credit-property insurance. Hence, assuming that this conduct was wrongful, for purpose of review of the certification order, the requisite underlying wrongful conduct of the sales representative constitutes fraudulent suppression of the fact that the premium was computed based on the total number of payments coupled with other unknown statements that may or may not constitute misrepresentations.
This Court dealt at length with the role of reliance in a fraudulent-suppression *1074 claim in Ex parte Household Retail Servs., Inc., 744 So.2d at 881, as follows:
"In connection with the Cosbys' fraud claim, they did not produce sufficient evidence indicating that these representations were standardized. Thus, class members very well might have relied on these varying representations instead of the alleged nondisclosure. Of course, the class members might not have relied on the representations but instead on the nondisclosure. The point is that we do not know what the class members relied upon, and, therefore, do not know whether the kinds of reliance varied from class member to class member. The Cosbys were apparently unable to produce evidence indicating that the various forms of reliance by each class member did not materially vary, as it was their initial burden to do in order to establish that common questions of fact predominate."
This is also the case here. We do not know whether the customers relied on varying representations made by the sales representatives instead of on the alleged nondisclosure or, for that matter, whether the information allegedly not disclosed would have made a difference to a consumer determined to close a transaction for which credit was essential. In fact, Hall testified that he continued to purchase credit-life and credit-property insurance in his dealings with Columbus Finance, even within two months of the evidentiary hearing. It is important to note that the trial court was equally impressed with the obstacle to class certification of the fraud claims created by the individual issues of reliance. Specifically, the trial court stated:
"While the Alabama Supreme Court `has not thus far adopted a blanket prohibition against the certification of a fraud class action' [Ex parte Household Retail Servs., Inc., 744 So.2d 871, 881 (Ala.1999) ], the reasoning of the Court in Ex parte Household Services in denying certification on the fraud claims is also applicable to the facts in this case. Therefore, the Court finds that the plaintiffs' credit property [and credit-life] insurance claims based on fraud and fraudulent suppression ... are not due to be certified for class action treatment."
We therefore conclude that the trial court correctly recognized the problems to class certification posed by proof of reliance but erred in failing to apprehend the element of reliance in proof of the underlying wrongful conduct of the sales representatives in the customers' claim of negligent or wanton hiring and supervision.
Voyager also argues that the customers' unjust-enrichment claims fails to meet the predominance requirement. Voyager contends that in order to prove their unjust-enrichment claims, the customers would have to present facts showing that Voyager "holds money which was improperly paid to [Voyager] because of mistake or fraud." Hancock-Hazlett Gen'l Constr. Co. v. Trane Co., 499 So.2d 1385, 1387 (Ala.1986). Voyager asserts that this would require evidence of each class member's individual transaction with Voyager's agents and evidence indicating that each class member relied on the alleged misrepresentations or omissions regarding Voyager's premium-rating method.
In his dissent, Justice Johnstone contends that the customers' unjust-enrichment claims do not require allegations and proof of either fraud or mistake of fact. He asserts that unjust-enrichment claims can be maintained when the money in question "in equity and good conscience belongs to plaintiff." Mitchell v. H & R Block, Inc., 783 So.2d 812, 817 (Ala.2000). He points to Ross Jewelers, Inc. v. State, *1075 260 Ala. 682, 72 So.2d 402 (1953), as an instance where this Court recognized unjust enrichment "as a valid theory for the recovery of excess sales taxes collected by a retailer from its customers." 867 So.2d at 1077 (Johnstone, J., concurring in part and dissenting in part).
However, Ross Jewelers is distinguishable for several reasons. First, it was not a class action, and it therefore does not assist us in resolving questions relating to compliance with Rule 23. Second, the plaintiff in Ross Jewelers did not commence an action grounded upon the common-law remedy of unjust enrichment. Instead, the plaintiff sued the State pursuant to Title 51, § 140, Code of 1940, a now-repealed part of the revenue code providing for appeals by a taxpayer from a final assessment. This Court, in ruling in favor of the State, determined that despite the fact that the State had incorrectly calculated the sales tax at issue, Ross Jewelers was not entitled to retain the excess taxes it had charged to its customers. The reference to unjust enrichment is found in this Court's statement that "[i]t would be an unjust enrichment for us to allow Ross Jewelers, Inc. to be the beneficiary of this fund." Ross Jewelers, 260 Ala. at 690, 72 So.2d at 408. This one statement regarding unjust enrichment does not establish Ross Jewelers as precedent for using the remedy of unjust enrichment as "a valid theory for the recovery of excess sales taxes collected by a retailer from its customers." 867 So.2d at 1077 (Johnstone, J., concurring in part and dissenting in part).
The customers' unjust-enrichment claims in this case are grounded in mistake of fact, and individual evidence would be required to prove mistake of fact. The customers in their brief state that their unjust-enrichment claims are based on "equity/mistake." Mistake of fact is essential to the customers' unjust-enrichment claims, as evidenced by the language of the customers' complaint, which states:
"Due to the actions of [Voyager], [charging premiums for credit-property and credit-life insurance that allegedly violate the Alabama Mini-Code, § 5-19-1 et seq., Ala.Code 1975, and Insurance Regulation 28], Plaintiffs and members of the plaintiff class paid monies to [Voyager] for said credit life insurance under mistake of fact, believing that the credit life insurance sold by [Voyager] was sold in compliance with all applicable state laws and regulations. To the contrary, Plaintiff and members of the plaintiff class were sold credit life insurance in amounts greater than allowed by Alabama law and regulations. As a result, [Voyager has] been unjustly enriched in the amount of all credit life insurance charges to the plaintiffs and members of the plaintiff class in excess of that allowed by Alabama law and regulations."
(Emphasis added.)
Furthermore, the trial court's certification order states:
"In the present case, the evidence introduced at the hearing showed common issues of law and fact regarding whether the agents of Voyager informed the customers that the credit property [and credit-life] insurance premiums were calculated on the total of payments, whether the calculation was done on any of the paperwork, and, thus, whether the class members paid the excessive premiums due to mistake. Furthermore, evidence was submitted to support Plaintiffs' claims that [Voyager] engaged in fraud, thus giving rise to a claim for unjust enrichment for the excessive premiums. Under both scenarios, there are common questions of law and fact."
(Emphasis added.)
The dissenting opinion contends that the common question presented here is the *1076 legal interpretation of the insurance regulations and the Alabama Mini-Code, § 5-19-1 et seq., Ala. Code 1975, and that individual mental states or operations are therefore not presented.[8] This is the equivalent of an assertion of mistake of law as a ground for recovery. However, as previously noted, the complaint expressly refers to mistake of fact, not law. Good reason exists for carefully choosing words used in a complaint. See Stone v. Mellon Mortgage Co., 771 So.2d 451 (Ala.2000), in which this Court held:
"If a party with full knowledge of the facts wrongly interprets them, so that he misperceives their legal significance, that wrong interpretation does not constitute a mistake of fact.... [It] constitutes a mistake of law rather than a mistake of fact, and a mistake of law does not preclude the application of the voluntary-payment doctrine.
"`... [I]t is equally well settled that money voluntarily paid with full knowledge of the facts but by reason of mistake of law cannot be recovered.'"
771 So.2d at 458 (quoting Sherrill v. Frank Morris Pontiac-Buick-GMC, Inc., 366 So.2d 251, 257 (Ala.1978) (Torbert, C.J., concurring specially)).
We have held that plaintiffs fail to meet the predominance requirement of § 6-5-641, Ala.Code 1975, when their unjust-enrichment claim turns on individual issues of mistake of fact. Smart Prof'l Photocopy Corp., 850 So.2d at 1251-52. In Smart Professional Photocopy Corp., individual proof was required to show whether every class member paid invoices to Smart Professional Photocopy by mistake in a setting where, as is the case here, the plaintiff alleged a violation of a statute but did not contend that the Legislature had established a private right of action for violation of the statute. In this case, each class member would have to prove that he or she purchased Voyager credit-life or credit-property insurance under a mistake of fact or as a result of a fraudulent suppression with respect to how the premiums were calculated.
Class members would be required to demonstrate mistake of fact on an individual basis. The knowledge and sophistication of customers varies from individual to individual. In Smart Professional Photocopy Corp., we held:
"Because of the necessity in this case of proving each class member's subjective state of mind, individual issues predominate over the customers' claims. The customers cannot prove that each member paid under the same mistake of fact nor can they determine the extent of each class member's knowledge upon payment of the invoice from Smart. Thus, the customers cannot satisfy their burden of proof as to each member's payment by mistake without individual inquiries."
850 So.2d at 1251. As was the case in Smart, the customers here cannot satisfy their burden of proof as to each class member's purchase by mistake without individual inquiries.
The same lack of commonality of reliance previously addressed in connection with the claim for negligent or wanting hiring and supervision permeates the customers' *1077 claim of unjust enrichment grounded in fraudulent suppression. We conclude that individual issues of fact predominate over the customers' unjust-enrichment claims.

B. Superiority
When individual issues predominate over the common claims, manageability of the action as a class is not possible. Smart Prof'l Photocopy Corp., 850 So.2d at 1252; Reynolds Metals Co., 825 So.2d at 108. The customer's claims fail to meet the superiority requirements of Rule 23(b)(3).

Conclusion
The trial court exceeded the permissible limits of its discretion in certifying the two subclasses in this case under Rule 23(b)(3). We vacate the class-certification order and remand the cause for further proceedings consistent with this opinion.
ORDER VACATED; CASE REMANDED.
MOORE, C.J., and HOUSTON, SEE, LYONS, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
JOHNSTONE, J., concurs in part and dissents in part.
JOHNSTONE, Justice (concurring in part and dissenting in part).
I concur in decertifying the classes for the pursuit of the claims for negligent or wanton hiring and supervision of agents and any claims for unjust enrichment based on either fraud or mistake-of-fact. I respectfully dissent, however, from decertifying the classes for the pursuit of the claims for unjust enrichment based on the defendants' collection of premiums exceeding the maximum rate allowed by Alabama insurance regulations or the Alabama Mini-Code, § 5-19-1 et seq., Ala.Code 1975. This last category of claims would not depend on "any questions affecting only individual members," Rule 23(b)(3), Ala. R. Civ. P.
Not all valid unjust enrichment claims include fraud or mistake-of-fact as an essential element. That is, not all valid unjust enrichment claims require allegations and proof of either fraud or mistake-of-fact. The gravamen element of unjust enrichment can be that the money "`in equity and good conscience belongs to plaintiff.' " Mitchell v. H & R Block, Inc., 783 So.2d 812, 817 (Ala.2000) (quoting Hancock-Hazlett Gen. Constr. Co. v. Trane Co., 499 So.2d 1385, 1387 (Ala.1986)). For instance, unjust enrichment has been recognized as a valid theory for the recovery of excess sales taxes collected by a retailer from its customers. Ross Jewelers, Inc. v. State, 260 Ala. 682, 690, 72 So.2d 402, 408 (1953).
The plaintiffs' complaint as last amended alleges in pertinent part:
"55. The selling of credit life insurance and the premium charged for credit life insurance are regulated by the Alabama Mini-Code (Ala.Code § 5-19-20(a)) and the Department of Insurance for the State of Alabama (Regulation 28). The Alabama Mini-Code provided at all times pertinent to this action that `Insurance with respect to any credit transaction shall not exceed the approximate amount and term of the credit.' Ala.Code § 5-19-20(a). Regulation 28 provided at all times pertinent to this action that the amount of credit life insurance sold shall never exceed the approximate unpaid balance of the loan. The premiums allowed to be charged for credit life insurance are based upon the amount of insurance sold.
"56. The amount of credit life insurance sold by the defendants to the named plaintiffs and the members of the *1078 plaintiff class and the premiums charged for that credit life insurance were in direct violation of the Alabama Mini-Code and Regulation 28 in that the amount of insurance sold at all times exceeded the `approximate amount and term of the loan' and the approximate unpaid balance of the loan. As a result, the premiums charged for said insurance exceeded the maximum allowed by the Alabama Mini-Code and Regulation 28.
"57. Due to the actions of the defendants, Plaintiffs and members of the plaintiff class paid monies to the defendants for said credit life insurance under mistake of fact, believing that the credit life insurance sold by the defendants was sold in compliance with all applicable state laws and regulations. To the contrary, Plaintiffs and members of the plaintiff class were sold credit life insurance in amounts greater than allowed by Alabama law and regulations. As a result, Defendants have been unjustly enriched in the amount of all credit life insurance charges to the plaintiffs and members of the plaintiff class in excess of that allowed by Alabama law and regulations.
"....
"61. The amount of credit property insurance sold by the defendants to the named plaintiffs and the members of the plaintiff class and the premiums charged for that credit property insurance were in direct violation of the Alabama Mini-Code and Regulation 93 in that the amount of insurance sold at all times exceeded the amount allowed by the provisions set forth above. As a result, the premiums charged for said insurance exceeded the maximum allowed by the Alabama Mini-Code and Regulation 93.
"62. Due to the actions of the defendants, Plaintiffs and members of the plaintiff class paid monies to the defendants for said credit property insurance under mistake of fact, believing that the credit property insurance sold by the defendants was sold in compliance with all applicable state laws and regulations. To the contrary, Plaintiffs and members of the plaintiff class were sold credit property insurance in amounts greater than allowed by Alabama law and regulations. As a result, Defendants have been unjustly enriched in the amount of all credit property insurance charges to the plaintiffs and members of the plaintiff class in excess of that allowed by Alabama law and regulations." (C. 3623-3627.)
"`[T]he allegations of the complaint are construed in a light most favorable to the complainant, with all doubts and allegations resolved in his favor.'" Lavoie v. Aetna Life & Cas. Co., 374 So.2d 310, 311 (Ala.1979) (quoting Pruitt v. Pruitt, 343 So.2d 495, 497 (Ala.1977)). So construed for this particular theory of unjust enrichment, the allegations in paragraphs 57 and 62 that the plaintiffs paid "under mistake of fact, believing that the ... insurance... was sold in compliance with all applicable state laws and regulations" are surplusage.
The gravamen of the claims the classes are certified to pursue in the case before us is that, in the words of the class certification order, "the premiums were calculated on the total of payments or some other amount greater than the amount financed." The classes include only plaintiffs who were charged such premiums. Therefore, this element will not depend on "any questions affecting only individual members." Rule 23(b)(3).
Next, the truth or falsity of the allegations that premiums so calculated exceed *1079 the maximum allowed by Alabama insurance regulations and the Alabama Mini-Code depends, not on "any questions affecting only individual members," Rule 23(b)(3), but on the legal interpretation of the insurance regulations and the Mini-Code as they apply to all members of each class commonly. This theory does not depend on allegations or proof of such individualized occurrences as conversations or presentations or such individualized mental states or operations in the class members as knowledge, understandings, beliefs, reliance, or mistakes.
Whether this theory constitutes "a claim upon which relief can be granted" that would withstand a Rule 12(b)(6), Ala. R. Civ. P., motion to dismiss is not material to the issue of whether the theory may be properly pursued in a Rule 23, Ala. R. Civ. P., class action.
"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23[, Fed.R.Civ.P.,] are met.
"`The determination whether there is a proper class does not depend on the existence of a cause of action. A suit may be a proper class action, conforming to Rule 23, and still be dismissed for failure to state a cause of action.'
"Indeed, there is absolutely no support in the history of Rule 23 or legal precedent for turning a motion under Rule 23 into a Rule 12 motion to dismiss or a Rule 56 motion for summary judgment by allowing the district judge to evaluate the possible merit of the plaintiff's claims at this stage of the proceedings. Failure to state a cause of action is entirely distinct from failure to state a class action."

Miller v. Mackey Int'l, Inc., 452 F.2d 424, 427-28 (5th Cir.1971) (quoting Kahan v. Rosenstiel, 424 F.2d 161, 169 (3rd Cir. 1970); internal citations and footnote omitted). Accord Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); Weathers v. Peters Realty Corp., 499 F.2d 1197, 1202 (6th Cir.1974); Cruz v. Hauck, 627 F.2d 710, 715 (5th Cir.1980). Indeed, if this theory does not withstand an eventual Rule 12(b)(6) challenge, the certification of these classes in this case will benefit the defendants by disposing of all such claims of all the class members in one single proceeding. Such efficiency and economy are among the cardinal purposes of Rule 23. General Telephone Co. of the Southwest v. Falcon, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), and American Pipe & Construction Co. v. Utah, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974).
NOTES
[1] On April 12, 2000, Voyager Group, Inc., Voyager Life and Health Insurance Company, Voyager Property and Casualty Insurance Company, and Voyager Insurance Companies filed a motion for a summary judgment arguing that they had never issued the credit-life and credit-property insurance in question. That motion was still pending at the time this case was submitted on briefs to this Court.
[2] At the time McGraw testified, he was senior vice president of Voyager.
[3] The record and the briefs refer to this entity simply as "Lorch."
[4] The third amended complaint dropped Kathy Ann Ellen as a class representative.
[5] The parties stipulated that the partial settlement agreement should not be interpreted as evidence in support of, or in opposition to, certification of the remaining claims.
[6] This discussion is found in the "Commonality" analysis of the trial court's order. The trial court's order contains a section entitled "Rule 23(b)(3) Predominance and Superiority Requirements." This section evaluates the customers' claims with regard to Rule 23(b)(3)(A), (B), (C), and (D), and refers the reader to the "Commonality" section for a discussion of "the substantive law, the elements and the proof of each of Plaintiffs' claims."
[7] We do not address the issue whether the failure to disclose such information was material or illegal; for purposes of determining the validity of the certification of a class, we accept the customers' allegations as true.
[8] Nothing in the complaint suggests that the Legislature intended a private right of action for violations of the portion of the Alabama Mini-Code at issue (§ 5-19-20(a), Ala.Code 1975, as that section read at the time pertinent to this action) or Reg. 28, State Department of Insurance Regulations (repealed effective November 1, 1999); the claim is grounded solely in the common-law remedy for unjust enrichment. Whether a different result would obtain when a private right of action is available is not before us.