I agree with the majority's reversal of the summary judgment as to the Hargroves' breach of contract claim. However, I respectfully dissent from the majority's affirmance of the summary judgment as to the Hargroves' claims alleging negligent and/or wanton hiring and supervision, and alleging premises liability.
 I.
To avoid a summary judgment on their claim alleging negligent and/or wanton hiring and supervision, the Hargroves must present *Page 1248 
substantial evidence indicating that Tree of Life had notice or knowledge (actual or presumed) of the alleged incompetency of J.B. and A.B. Ledbetter v. United American Ins. Co.,624 So.2d 1371 (Ala. 1993). Liability depends upon its being established by affirmative proof that such incompetency was actually known by Tree of Life, or that it could have been discovered through the exercise of due diligence. Ledbetter.
The evidence shows that by a regulation the Alabama Department of Human Resources requires that day care workers in a state licensed facility be at least 19 years of age and that student aides be at least 16. Bernice Mahan, the director of Tree of Life and the person in charge of hiring and supervising its employees, was charged with knowledge of this regulation. Mahan knew or, through the exercise of due diligence, could have learned that J.B., age 14, and A.B., age 17, did not meet this minimum-age qualification for working at Tree of Life.[5] Moreover, Mahan knew or should have known that neither J.B. nor A.B. met the standards outlined in Tree of Life's written "Operating Policies" that each parent received a copy of. According to the "Operating Policies":
 "All staff members are selected on the basis of experience in working with young children, educational background, emotional stability, as well as care and concern for the well-being of the child. All participate in a continuous program of in-service education and studies for professional advancement in order to remain alert to the ever-changing needs of today's children and families, and to the findings of current research."
There is no evidence that J.B. and A.B. had any formal training or experience in caring for infants. As their foster mother of four months, Mahan was aware that J.B. and A.B. had themselves been victims of an unstable, perhaps abusive, prior home life. Acting as the director of Tree of Life, Mahan nevertheless employed the underaged and untrained girls in the day care center, allowing them to care for the Hargroves' three-month old infant.
The record shows that, when the kidnapping occurred, at approximately 4:00 p.m., J.B. and A.B. were virtually the only ones left on the premises of the day care facility. Mahan had allowed most of the adult staff to leave for the day, although there were still children to be picked up. When the Hargroves' baby was discovered to be missing, J.B. told Mahan that Mr. Hargrove had picked up the baby. Mahan did not know this statement was false, because she had not monitored the area where the children were to be picked up and had not assigned an adult worker to do so. When questioned by the police, Mahan repeated J.B.'s false statement, and Mr. Hargrove was then subjected to questioning under suspicion of having kidnapped his own child.
Based upon the foregoing, I believe that Mahan, as the agent with the responsibility of hiring workers for Tree of Life, either knew or should have known that J.B. and A.B. were unfit to be employed as child care workers at the day care center. Moreover, I believe there are questions of fact as to whether Mahan adequately supervised J.B. and A.B. and her adult staff. I would therefore reverse the summary judgment as to the Hargroves' claims alleging negligent and/or wanton hiring and supervision.
 II.
As to the issue of premises liability, I recognize that a defendant cannot be held liable for the criminal act of a third party unless (1) special circumstances or relationships impose a duty on the defendant to protect another from the criminal act of a third person; and (2) the defendant knew or had reason to know that the criminal act was about to occur on the defendant's premises. Young v. Huntsville Hospital,595 So.2d 1386 (Ala. 1992). It is clear that special circumstances imposed a duty upon Tree of Life to protect the Hargroves' infant from being taken by unauthorized persons. In return for accepting the Hargroves' money, Tree of Life *Page 1249 
took this duty upon itself, incorporating it into its own procedures, as stated in its "Operating Policies":
 "Children will be released only to properly identified persons who have been listed in the 'child release' section of the Parent-Agreement Form. We must have written authorization for changes in this respect. In unusual circumstances, we will accept verbal (phone) authorization to release a child to an individual not listed in writing. It must be followed up in writing if the child is to be released to that person on an ongoing basis. We will ask for identification of individuals we do not know."
The majority recognizes that Tree of Life assumed this duty, but then finds that the Hargroves offered no substantial evidence that Tree of Life, through its agent Mahan, could have expected that J.B. and A.B. would harm the plaintiff's three-month-old child. The majority relies upon N.J. v. GreaterEmanuel Temple Holiness Church, 611 So.2d 1036 (Ala. 1992), wherein this Court held that a kindergarten had no liability for a minor child's raping another minor child on the kindergarten's premises. In that case, however, the victim was not formally enrolled in the kindergarten, so it was not clear that the kindergarten had undertaken a special duty to protect her. Even assuming that the kindergarten did have such a duty, there was no evidence that the kindergarten had failed to properly supervise the victim on the day she was raped. Moreover, the kindergarten averred that it did not know, or have reason to know, that the rapist, himself a minor child, had criminal propensities.
In this case, Tree of Life did undertake the care of the Hargroves' child, and I believe that, because the child was an infant and therefore unable to defend herself, this duty was even more acute. As to the foreseeability of the crime, Tree of Life, through Mahan, knew or should have known that J.B. and A.B. did not meet the minimum qualifications necessary to work in the day care, and certainly lacked the training and maturity necessary to care for a three-month old baby. By placing the Hargroves' baby in the care of juveniles, Tree of Life created a circumstance in which harm to the baby was a most foreseeable outcome. I would therefore reverse the summary judgment for Tree of Life as to the Hargroves' premises liability claim.
[5] Obviously, J.B. would not qualify either as a child care worker or as a student aide. While A.B.'s age alone would not preclude her from qualifying as a student aide, the record indicates that she worked as a child care worker, not as a student aide.