[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 02-11326
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 20, 2007
THOMAS K. KAHN
CLERK

D. C. No. 00-01810-CV-N-S

DIANNE PALMER,

                              Plaintiff-Appellant,

                versus

LOCAL 8285 UNITED STEEL WORKERS OF AMERICA,
ZEN PEARSON, an individual,

                              Defendants-Appellees.

MEADOWCRAFT, INC.,

                              Defendant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(April 20, 2007)**

Before ANDERSON, DUBINA and KRAVITCH, Circuit Judges.

PER CURIAM:

In this appeal, Dianne Palmer challenges the district court's subject matter jurisdiction over her Alabama state law claims of defamation; negligent supervision/failure to train and supervise; outrage; and negligent and intentional infliction of emotional distress. This case, originally filed by Palmer in state court, was removed by the defendants to federal district court under 28 U.S.C. § 1441(a) on the basis of complete preemption. Palmer unsuccessfully attempted to have the case remanded to state court, arguing that her claims presented no federal questions,[1] but the district court retained the case and ultimately disposed of all claims in favor of the defendants.

Palmer is an employee of Meadowcraft, Inc. ("Meadowcraft") and a member of the local unit of the United Steel Workers of America (the "Local Union"), the collective bargaining representative for many Meadowcraft employees. The collective bargaining agreement between Meadowcraft and the Local Union relevant to this lawsuit (the "CBA") was entered into on July 1, 1998 and remained in effect until July 1, 2001.

---

[1] According to her notice of appeal, Palmer also intended to challenge the district court's grant of summary judgment to the defendants on two of her claims, the other two earlier having been dismissed for failure to state a claim. Because she did not address the district court's rulings on the merits of her claims in her initial brief, however, we deem Palmer to have waived these arguments on appeal. See Lind v. United Parcel Serv., Inc., 254 F.3d 1281, 1283 n.2 (11th Cir. 2001). We therefore consider only the jurisdictional issue here.

Zen Pearson is also an employee of Meadowcraft and a member of the Local Union. Prior to October 1999 there had never been a Local Union newsletter, but union members had expressed a desire for one. Therefore, at the request of the Local Union president, Pearson authored and printed four editions of a union newsletter between October 1999 and March 2000. Pearson used her home computer to produce the newsletters, and determined the content contained in them on her own. She distributed the newsletters at the Meadowcraft plant before work began, and left copies for employees to pick up at her work booth.

Pearson's March 2000 newsletter featured the following article:

D P What is a D P?
1. Always into someone else's business.
2. Loud Mouthed and arrogant for no apparent reason.
3. Get chaos and confusion started among members, then sits back to see what becomes of it.
4. Rude in every aspect.
5. Shows bad bathroom manners by taking up stalls,. that someone may really need to make use of.
Okay. Now that you've got the idea members,. Please!! Don't be a D P and try your best not to have a D P day.
The above article does not reflect any particular person all similarities are just coincidental.

In addition to Pearson handing out the March edition at the plant and leaving copies at her booth, this newsletter was also posted on a Meadowcraft bulletin board.

In response to Pearson's article, Palmer filed the instant lawsuit against Meadowcraft, the Local Union, and Pearson (hereinafter referred to collectively as "Defendants") in Alabama state court. Defendants removed the action to federal district court, contending that at least some of Palmer's claims were completely preempted by federal labor law and therefore presented a case over which the federal district court had original subject matter jurisdiction.[2] Once in federal court, Meadowcraft filed a motion to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), and Palmer filed a motion to remand to state court, which was denied. The motion to dismiss was granted as to Palmer's outrage and infliction of emotional distress claims, but denied as to her defamation and negligent supervision claims. Defendants then filed motions for summary judgment on the remaining two claims. Palmer renewed her motion to remand. The district court, reaffirming its finding that it possessed jurisdiction over Palmer's claims, granted

---

[2] For a case brought in state court to be removable to federal court, the case must be one over which the federal court has original jurisdiction. See 28 U.S.C. § 1441(a). Here, the purported jurisdiction of the district court was based on the suit presenting a federal question under 28 U.S.C. § 1331. State law claims that do not, on their face, reference any issue of federal law may nonetheless involve a federal question sufficient to confer original federal question jurisdiction on a district court under the doctrine of complete preemption, as explained in this opinion.

summary judgment in favor of Defendants. Palmer appealed the district court's denial of her motion to remand this case to state court.[3]

During the pendency of the appeal, Meadowcraft filed for bankruptcy protection and we stayed the appeal. Meadowcraft's bankruptcy plan was confirmed and Meadowcraft moved to dismiss the appeal as moot. After Palmer failed to respond to the motion to dismiss, this court granted the motion, lifted the stay, and dismissed the appeal as to Meadowcraft. We now consider the claims as to the remaining parties.

We review de novo whether a district court may exercise jurisdiction over a case based on complete preemption, or instead must remand to state court. Anderson v. H&R Block, Inc., 287 F.3d 1038, 1041 (11th Cir. 2002). In determining whether a district court has subject matter jurisdiction, we must look to the facts as they existed at the time the action was filed. Keene Corp. v. United States, 508 U.S. 200, 207, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993); Leonard v. Enter. Rent A Car, 279 F.3d 967, 972 (11th Cir. 2002). For purposes of this challenge to the subject matter jurisdiction of the district court, the critical time is the date of removal. Leonard, 279 F.3d at 972 (addressing diversity jurisdiction under 28 U.S.C. § 1332); see also Poore v. American-Amicable Life Ins. Co. of Tex., 218 F.3d 1287, 1289-91 (11th Cir.

---

[3] See supra note 1.

5

2000).  If jurisdiction was proper at that date, subsequent events will not operate to divest the court of jurisdiction.  Id.

Title 28 U.S.C. § 1441(a) allows for removal to federal court of any civil action brought in state court over which the federal court has original jurisdiction.  See 28 U.S.C. § 1441(a).  Removal based on federal question jurisdiction, as in the instant case, is generally governed by the well-pleaded complaint rule.  See Louisville v. Nashville R.R. v. Mottley, 211 U.S. 149, 152 (1908).  Following this rule, a court looks to the face of the plantiff's properly pleaded complaint in order to determine whether a state law claim presents a federal question.  See id.

The doctrine of complete preemption, however, exists as an exception to the well-pleaded complaint rule.  See Caterpillar, Inc. V. Williams, 482 U.S. 386, 393 (1987).  Under this doctrine, certain state law claims brought in state court may be removed to federal court under § 1441(a) as containing a federal question even where the face of the plaintiff's properly pleaded complaint makes no reference to any issues of federal law.  The reasoning behind the doctrine is that the preemptive force of certain federal statutes is so strong that their implication in a case can convert an ordinary state claim into a statutory federal claim.  See id.

The Supreme Court has held that § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, has such extraordinary preemptive force as to be an

appropriate federal statute under which to find complete preemption.[4] See e.g. Allis-Chalmers v. Lueck, 471 U.S. 202, 211 (1985). For complete preemption to apply, resolution of the state law claim must "require[] the interpretation of a collective bargaining agreement." Lingle v. Norge Div. Of Magic Chef, Inc., 486 U.S. 399, 405-06, 413 (1988); see also United Steelworkers of Am. V. Rawson, 495 U.S. 362, 369 (1990); Caterpillar, 482 U.S. at 394; Allis-Chalmers, 471 U.S. at 213.

In deciding whether a state tort law claim requires the interpretation of collective bargaining agreement, we must look to the elements of the state law claim, see Lightning v. Roadway Express, Inc., 60 F.3d 1551, 1557 (11th Cir. 1995), to determine "whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." Allis-Chalmers, 471 U.S. at 213. Under Alabama law, a plaintiff asserting a claim for negligent supervision must, as in all negligence cases, show that the defendant owed her a duty, and establish the scope of that duty. See Ledbetter v. United Am. Ins. Co., 624 So.2d 1371, 1373 (Ala. 1993). For Palmer to have prevailed on her claim of negligent supervision against

---

[4] Section 301(a) of the LMRA provides for federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization... ." 29 U.S.C. § 185(a). Although the language of the statute speaks only to suits for violation of contracts, the Supreme Court has held that the preemptive force of § 301 extends to stae law tort actions as well. See Allis-Chalmers v. Lueck, 471 U.S. 202, 211 (1985)("[Q]uestions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort.").

Meadowcraft, she would be required to demonstrate that the company owed a duty to her to supervise and train Pearson in regard to Pearson's role as editor of the Local Union newsletter. Because we find no such duty existing in the common law, if Meadowcraft did undertake this duty, its source must be the CBA. Thus, in order to determine the extent to which, if at all, such a duty exists, the CBA will have to be examined and interpreted. We therefore hold that § 301 of the LMRA completely preempted Palmer's negligent supervision claim against Meadowcraft, and that the district court properly exercised its subject matter jurisdiction as to that claim.[5]

Because Palmer's claim of negligent supervision against Meadowcraft was completely preempted, it follows that the district court properly maintained subject matter jurisdiction over the entire case pursuant to its supplemental jurisdiction. See 28 U.S.C. § 1367(a). We therefore do not consider whether complete preemption, pursuant to § 301 or any other federal statute, appropriately applied to any of Palmer's other claims or even her claim of negligent supervision against the Local Union.

---

[5] Although the CBA did not contain any explicit terms regarding a duty on the part of Meadowcraft to supervise the content and production of Local Union newsletters, a collective bargaining agreement can create duties and conditions of employment not "expressly recited in the agreement." Allis-Chalmers, 471 U.S. at 214. Besides, Palmer alleged as part of her failure to supervise claim that the article was posted on a bulletin board maintained and controlled by Meadowcraft, and the CBA contained explicit references regarding the use of the company bulletin board.

Based on the foregoing, we **AFFIRM** the jurisdiction of the district court.